## GRIBBLE et al. v. CALL.

### No. 1851.

Court of Civil Appeals of Texas. Eastland.

Dec. 2, 1938.

Rehearing Denied Jan. 20, 1939.

P. G. McElwee, of Houston, for appellants.

A. G. Schluter, of Jefferson, C. C. Renfro, of Dallas, and Cornelius & Heaton, and P. G. Henderson, all of Jefferson, for appellee.

LESLIE, Chief Justice.

Charles G. Gribble and others instituted this suit against George H. Call in trespass to try title, and for possession of lots 4, 5, and 6, Block 95, Alley Addition to the city of Jefferson. The defendant pleaded not guilty and asserted title by limitation under the 3, 5, 10 and 25 years statutes of limitation. Vernon's Ann.Civ.St. arts. 5507, 5509, 5510, 5519. The trial was before the court without a jury and judgment was rendered that plaintiffs take nothing. They prosecute this appeal.

The case is before us on transcript and statement of facts, but without findings of fact or conclusions of law. The parties will be referred to as in the trial court.

There is no dispute as to the boundaries or the location of the lots on the ground. The evidence establishes that the plaintiffs are the owners of the record title and entitled to recover possession, unless the defendant has shown title in himself under some plea of limitation.

If the judgment is correct, it must be upon the theory that the plaintiffs lost title under the operation of the 10 years statute of limitation when applied to the facts of the case. Hence the contest centers around title, if any, by adverse possession.

Facts and circumstances leading up to the litigation are in substance as follows: March 4, 1907 E. W. Taylor and Helen Smith, a feme sole, and as sole heir of John P. Smith, deceased, as well as independent executrix of the estate of Kate Smith, purport to have conveyed said lots to the "General Dick Taylor Camp No. 1265, U.C.V., its commander, adjutant and

quarter master, and the R. E. Lee Chapter of the U.D.C." in said city of Jefferson. The habendum clause of that instrument reads "To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in any wise belonging, unto the said Dick Taylor Camp, U.C.V. and said officers of same and their successors, and to R. E. Lee Chapter, U.D.C. and their assigns forever." This instrument was filed for record August 3, 1907.

Immediately upon the execution of this deed individual members of the Dick Taylor Camp and the individual members of said U.D.C. took physical possession of said lots, erected thereon in honor of the Confederate dead a granite monument about 15 feet high and dedicated the same with appropriate ceremonies, and enclosed the lots with an iron fence of permanent duration. These individuals, the names of the active ones being disclosed by the record, filled in the lots with many loads of dirt, put out flowers, shrubbery and developed the enclosure into what was known and referred to as the Confederate Park. The entrance to same was by a gate which these individuals, through one of their number, kept locked and by whose permission alone access could be had to the lots. These and many other like acts of appropriation exercised by these individual members of the two groups continued from about March 4, 1907 to about October 17, 1933, on which latter date the remaining surviving members of the Chapter of the U.D.C., by proper resolutions, executed and conveyed all the interest owned by them and the members of said group, to the City of Jefferson. The consideration for this conveyance was that the city take down said monument, remove it to the courthouse square and there re-erect it and care for it in the future. Pursuant to this arrangement the City immediately discharged its obligations.

Thereafter, on June 21, 1937, various parties—representing themselves to be the "heirs at law of the last surviving members of the Dick Taylor Camp"—executed a like instrument or conveyance whereby they undertook to convey to the city their interest in said lots. The consideration for this conveyance was the same as that specified in the deed from said parties acting for said Daughters of the Confederacy. It was also in confirmation of that conveyance. At the date of the exe-

cution of each of the above instruments, the last surviving members of the Dick Taylor Camp had been dead for several years, the last one dying in 1929. The only surviving members of the Chapter of the U.D.C. assembled as stated and adopted resolutions to convey the property to the city and the chapter's officials carried out the instruction.

On receiving the instrument of conveyance dated October 17, 1933, the city also received possession of the property and on that date sold part of the lots to the State for highway purposes and the remainder of the lots it sold to the defendant in this case, George H. Call. The actual possession of the lots thus received by the city, with such right and title thereto as it acquired, the city thus passed on to its vendees, who likewise assumed possession in virtue of the city's conveyances. In other words, the plaintiffs on filing this suit found the defendant in lawful possession of the property thus conveyed to him.

It is here contended by the plaintiffs that the chapter of the U.D.C. was a voluntary association and as such incapable of acquiring title by adverse possession. The same proposition is asserted as to the Dick Taylor Camp of the U.C.V. In support of the contention plaintiffs cite, among other authorities, Tunstall v. Wormley, 54 Tex. 476; Methodist Church v. Roach, Tex.Civ.App., 51 S.W.2d 1100; Heiskell v. Trout, 31 W.Va. 810, 8 S.E. 557. In other words, it is urged, as stated in the last named authority that "In order to obtain a title by adverse possession or the lapse of time, the adverse claimant must be capable of a legal ownership of the property. Here the church, the alleged claimant, is incapable of holding property under its claim, and therefore no possession or adverse claim by it could by the lapse of time or the statute of limitations confer upon it any title, or defeat the claims of the rightful owners."

In response to these contentions, the defendant presents as a counter proposition that: "A deed which conveys real property to certain named officers of an association and their successors, is a sufficient conveyance upon which to predicate a claim of adverse possession under the statute of limitation of the State of Texas." The statement under this counter proposition points to the conveyance as above worded together with the habendum.

clause above set out. From the standpoint of the defendant and in the light of the counter proposition, the first difficulty encountered by us is that there is no evidence that the General Dick Taylor Camp ever had a commander or quartermaster, and the testimony merely discloses that at some time, possibly about the date of the demise or dissolution of the Camp, it had an adjutant by the name of Biggs. If trustees under any name had been shown, our problem would be a simpler one. The record is void of any testimony disclosing any bylaws, rules and regulations by which the Camp was governed if it ever organized and existed under such. Abstractly speaking, the counter proposition may be correct, but it suggests a theory which we doubt is supported by the record. However, that may be an immaterial consideration under the disposition which we find it necessary to make of this appeal. The judgment should be affirmed if the pleadings and the testimony support any theory upon which that may be done, and we think such theory is amply reflected by the record as will presently be shown.

■ We recognize that an unincorporated association is legally incapable in its associate name of taking and holding real estate and that in the absence of a statute empowering same to be done, it may not as such sue or be sued. The rule is stated in 5 C.J. p. 1343, sec. 32, as follows: "In the absence of any statute empowering it to do so an unincorporated association having no legal existence independent of the members who compose it, is ordinarily incapable, as an organization, of taking or holding either real or personal property in its associate name; and a conveyance to an unincorporated association ordinarily passes title to no one. * * * However, members of a voluntary association may take and hold property jointly as individuals and accordingly a grant to an association by name may be construed as a grant to its members, and a gift to an association by name, if not impressed with any trust or charitable use, vests in the persons composing the society."

As to taking and holding property by such association it is also stated in 7 C.J.S., Associations, sec. 14, (1) page 38, as follows: "Generally speaking, an unincorporated association may not, as such, take or hold property although its members may hold property jointly as individuals."

The text at that point comments upon the rule in this language: "In the absence of a statute empowering it to do so, it is ordinarily held that an unincorporated association, having no legal existence independent of the members who compose it, is incapable as an organization of taking or holding either real or personal property in its associate name, and that a conveyance to an unincorporated association passes title to no one; but there is some authority to the contrary (Town of Gravette v. Veach, [186 Ark. 544] 54 S.W.2d 704.) * * * In any event, the members of a voluntary association may take and hold property jointly as individuals, and accordingly a grant to an association name may under the circumstances be construed as a grant to its members and a gift to an association by name if not impressed with any trust or charitable use, may vest in the persons composing the society."

However, in the disposition of this appeal we are not concerned with legal theories pertaining to conveyances to unincorporated associations by name and as such. This is true for the reason that the deed of March 4, 1907 from Taylor and others purporting to convey the lots to the said Camp and Chapter did not convey to anyone any interest whatever because the grantors in that instrument were strangers to the title they purported to convey. They owned no interest in the lots.

■ On the other hand, the case before us is grounded upon the proposition that certain individuals, some of them known as Confederate Veterans and others as Daughters of the Confederacy, went into actual possession of said lots as early as 1907, and as individuals for themselves and jointly with their associates held continuous, peaceable and adverse possession of the same for some 25 or 30 years, using and enjoying them (for the purposes appropriated) and under such circumstances as matured in the individual members of the organization a title under the 10 years limitation statute. The possession by these individuals was actual, visible, notorious, adverse and hostile. Jobe v. Osborne, Tex. Civ.App., 68 S.W.2d 375; Houston Oil Co. v. Stepney, Tex.Civ.App., 187 S.W. 1078, 1084, writ ref.

Their acts establishing the adverse claim and possession is so clearly reflected by the

testimony that no further discussion thereof need here be made. Surely, they were of such a nature as to put any rightful owner of the property on distinct notice that adverse claim was being asserted to the property thus appropriated. The circumstances leave no room for doubt on that point.

It is believed the rights of these individuals in the property thus acquired are governed by the principles applicable to co-tenants. Under the subject of adverse possession the rule concerning the possession by co-tenants (2 C.J.S., Adverse Possession, § 52 page 568) is stated thus: "The requisite possession may consist of the joint possession of two or more persons claiming as co-tenants." (See also 2 C.J. p. 122, sec. 204). Following this statement of the rule the text (C.J.S.) carries this comment: "Two or more persons claiming as co-tenants may as such have such joint possession as may ripen into title." In support of this last proposition Burleson v. Burleson, 28 Tex. 383, is cited. The syllabus of that opinion summarizes the court's holding on the point under consideration as follows: "Under the statute of limitation of three years, adverse possession by parties claiming lands as joint tenants or tenants in common is as available and effectual as though each of them claimed his part by a title in severalty."

It was held in LeBlanc v. Robertson, 41 La.Ann. 1023, 6 So. 720, that "There is nothing in the law which prevents joint titles being acquired by prescription or joint possession being the basis thereof. On the contrary, the law is clear that joint owners can possess in common the thing belonging to them in indivision and that they may prescribe against the true owners by such possession for the required length of time."

To this point, we cite Byam et al. v. Bickford, 140 Mass. 31, 2 N.E. page 687. The syllabus of that opinion reflects the pertinent holding as follows: "Where a deed for real estate is made to persons as and for a voluntary unincorporated association, not empowered to purchase and hold real estate, the members of such association become and hold said land as tenants in common."

The conveyance in that case was to "South Schlemsford Hall Association."

However, as previously stated, the true basis of the title claims in the instant case is not a grant or conveyance to an unincorporated association or to the individuals thereof, for no effective grant or conveyance is evidenced by the original deed of March 4, 1907. As pointed out the grantors were strangers to the title. The above authorities are referred to merely as reflecting the interest acquired by co-tenants or persons jointly acting in the acquisition of property under a statute of limitation. We see no reason why the individuals of a group acting in concert with each other may not thus mature title to the real estate under the 10 years statute of limitation. Certainly the rightful owners of the lots, whoever they were, had a remedy against these individuals from the moment of appropriation by them back in 1907. Such owners did not sue them in trespass, eject them from the property, or otherwise vindicate their right of title and possession until long after the statute of limitation conferred an absolute title upon these individuals. It is the duty of the court to recognize such a title in them, the same as if it were a good record title.

After the title was thus completed in the individuals, the members of the Veterans Camp passed away, but the surviving members of the R. E. Lee Chapter of the U.D.C. continued to occupy and possess the property the same as the individuals of each order had jointly done theretofore. By proper instrument of conveyance they transferred the possession and the interest held by them in these lots to the city. The city passed it on to the defendant Call, and the evidence discloses the unbroken privity of title and possession as between the parties.

The element of possession thus acquired by Call was complete and if he did not acquire full title to the property, which we are not called upon to determine, nevertheless the plaintiffs cannot raise such question since they were obliged to recover, if at all, upon the strength of their own title.

The original deed by Taylor and others to the Camp and Chapter doubtless could be looked to as muniment of title for identity of defendant's claim, nature and extent of possessors' claim, but since the individuals who took possession thereof immediately placed a substantial iron fence on the boundaries of the lots, the location and limits of the claim were fully established in that way.

Article 6133, R.S.1925, has no application to the facts of this case but has reference to unincorporated associations, etc. "doing business in this State" as construed by this court in Realty Trust Co. v. First Baptist Church, Tex.Civ.App., 46 S.W.2d 1009.

The views above expressed dispose of the controlling questions presented by this appeal. Other propositions are either overruled or rendered immaterial. For the reasons assigned, the judgment of the trial court is affirmed.