Argued at Pendleton May 5; affirmed July 14, 1942

# STATE *v.* SUNBEAM REBEKAH LODGE No. 180 OF HERMISTON, OREGON, ET AL.

(127 P. (2d) 726)

Before KELLY, Chief Justice, and BAILEY, LUSK, RAND and BRAND, Associate Justices.

*George R. Lewis* and *John F. Kilkenny*, both of Pendleton (George R. Lewis and Raley, Kilkenny & Raley, all of Pendleton, on the brief), for appellants.

*A. S. Cooley*, of Pendleton (A. C. McIntyre, District Attorney, and C. C. Proebstel, Deputy District Attorney, both of Pendleton, on the brief), for respondent.

BAILEY, J. This proceeding was instituted by the State of Oregon against Sunbeam Rebekah Lodge

No. 180 of Hermiston, Oregon, a corporation, William Shenyer and Vera Shenyer, his wife, and F. B. Swayze as executor of the last will and testament of James Eddie, deceased, to have certain described real property containing 23.83 acres, situate in Umatilla county, adjudged escheated to the state. From a judgment in favor of the plaintiff, all the defendants except the executor have appealed.

James Eddie died testate and without heirs August 5, 1940. At the time of his death he owned and lived on a small farm located a short distance from the city of Hermiston, which real property is the subject of this litigation. The defendants William Shenyer and Vera Shenyer, his wife, are in the actual possession of the real property here involved, claiming under a contract to purchase the same from the defendant corporation. Their right to the land is entirely dependent upon whatever title thereto or interest therein the defendant corporation may have acquired.

The last will of James Eddie, executed June 12, 1931, was admitted to probate August 10, 1940; and the defendant Swayze, named in the will as executor thereof, was appointed as such executor and duly qualified. The first paragraph of the will makes provision for the payment of the testator's debts and funeral expenses. The second paragraph thus reads:

"I give unto and bequeath unto Sunbeam Rebekah Lodge No. 180 of Hermiston, Oregon, all of the remainder of my property both real and personal, wheresoever located."

When he executed his will and at the time of his death, James Eddie was a member of Sunbeam Rebekah Lodge, then an unincorporated society. There-

after, on or about March 13, 1941, articles of incorporation of such lodge were filed in the office of the corporation commissioner of the state of Oregon and in the office of the clerk of Umatilla county. Ever since that date the lodge has been conducted as a duly incorporated society, and it claims to have succeeded to all the rights and title of the unincorporated society to the real and personal property of James Eddie, deceased.

The plaintiff's contention that the real property of the decedent has escheated to it, the state, is based on the following grounds: (a) that Sunbeam Rebekah Lodge, an unincorporated association or society, was incapable of taking title to real property; and (b) that no charitable trust was created, because (1) the provision of the will hereinabove quoted does not designate any charitable purpose to which the real property, or the income therefrom, shall be devoted, and (2) Sunbeam Rebekah Lodge No. 180 was not a charitable organization. The right of the lodge to receive the personal property of the decedent is not contested by the state.

The plaintiff concedes that if a charitable trust had been created by the will, the courts would not permit it to fail for lack of a trustee. In addition, the plaintiff concedes, at least impliedly, that if Sunbeam Rebekah Lodge No. 180, although unincorporated, were operated exclusively for charitable purposes, the devise of real property to it could be sustained as a charitable trust.

The contentions of the appealing defendants are thus expressed in their brief:

"1. The association is a charitable organization and for that reason the court should not permit the devise to fail but should appoint a trustee to hold title and administer the trust.

"2. That Sunbeam Rebekah Lodge No. 180, even though an unincorporated association, is capable of taking and holding title to the real property.

"3. Even though the association is not capable of taking and holding title to the real property, the devise to the association passes title to the individual members in that the members can be identified."

Mr. S. F. Bowman, past grand master of the Oregon grand lodge of Odd Fellows, testified that the Rebekah lodges were under the jurisdiction of the Rebekah assembly; that the assembly was subordinate to the grand lodge of Odd Fellows of Oregon; and that the charter of the Rebekah assembly was obtained from the grand lodge of Odd Fellows.

Article I of the constitution for Rebekah lodges of Oregon, as revised in May, 1939, provides in part as follows:

"Sec. 2. The objects and purposes of this lodge are to aid in the establishment and maintenance of a home for the aged and indigent Odd Fellows and their wives, and for the widows of deceased Odd Fellows and Rebekahs; and homes for the care, education and support of orphans of deceased Odd Fellows and Rebekahs.

"Sec. 3. To visit the sick, relieve the distressed and in every way to assist subordinate and sister Rebekah lodges in kindly ministrations to the families of Odd Fellows who are in trouble or want.

"Sec. 4. To cultivate and extend the social and fraternal relations of life among the lodges and families of Odd Fellows."

After quoting the foregoing three sections of article I, counsel for the appealing defendants state:

"The definite objects and purposes of the lodge seem to be set forth in section 2. Section 3 and

section 4 of article I do not mention the objects
and purposes although they follow section 2. Under
the ordinary rules of construction the objects and
purposes of the lodge would be limited to section
2, article I.''

■ We can not concur in this construction of the
three sections quoted. The only question as to their
meaning is solved by recognizing the errors of punctua-
tion and sentence structure which they contain. In
order for sections 3 and 4 to make sense, or to meet the
primary structural requirement of subject and predi-
cate, they must be preceded by the first eight words
of section 2 and must be read in connection with those
words. What was intended by the inexpertly written
sections 2, 3 and 4, above quoted, is clearly shown by
the statement of objects and purposes of Rebekah
lodges set forth on page 7 of the Rebekah Lodge Ritual
handbook, thus:

"The objects and purposes of Rebekah lodges
are declared to be:

"First. To visit and care for the sick; to relieve
the distressed; to bury the dead; and in every way
to assist their own members, and to assist subordi-
nate and sister Rebekah lodges in kindly ministra-
tions to the families of Odd Fellows when in trouble,
sickness, or want.

"Second: To aid in the establishment and main-
tenance of homes for aged and indigent Odd Fellows
and their wives, and for the widows of deceased
Odd Fellows; and homes for the care, education
and support of orphans of deceased Odd Fellows
and of deceased sisters of the Rebekah degree.

"Third: To cultivate and extend the social and
fraternal relations of life among lodges and the
families of Odd Fellows.''

Among other provisions of the constitution for Rebekah lodges of Oregon we note, under the heading "Powers and Privilege", section 5 of article V, thus reading:

"To pay and disburse from the funds of the lodge, from time to time, as the majority of the members present shall by vote determine, for any of the declared purposes of this degree; provided that lodges may set aside twenty per cent of their receipts, from all sources as a contingent fund; and provided further, that not to exceed fifty cents per meeting night, may be paid to any officers as a compensation for her services."

By the designation "this degree", which appears in the section last quoted, is to be understood the Rebekah degree as distinguished from the degree of Odd Fellows. This interpretation is indicated by the language of section 2 of article I of the constitution for the Rebekah assembly of Oregon. As so understood the word "degree" applies to every individual Rebekah lodge in Oregon, which is governed by the uniform Rebekah constitution. The "declared purposes of this degree" are the purposes stated in the constitution for Rebekah lodges and in the ritual handbook.

One other part of the constitution has, according to the appealing defendants, some bearing on the question before us, namely article VII, which consists of only one section and reads as follows:

"The funds and property of this lodge, having been raised for the relief of the sick and distressed members and other charitable uses in the order, can not be divided in any manner among the members, but shall remain the property of this lodge for its legitimate purposes, so long as its charter is unreclaimed."

If the charter of a Rebekah lodge is reclaimed by the grand lodge, the funds of the disfranchised lodge, according to Mr. Bowman's testimony, revert to the grand lodge and are ''used for the support and maintenance of the Odd Fellows Home and any other necessary charities, and for the operation and overhead expenses of the grand lodge.''

The defendant lodge at the time of the trial had fifty-four members, each paying dues of two dollars annually. Out of every such payment the sum of thirty cents is devoted to the support and maintenance of the Odd Fellows home. After paying rent and other expenses connected with its meetings, the defendant lodge has little money left for other purposes. In the past the lodge has given money toward the purchase of school children's uniforms, bought flowers for sick members and disbursed funds toward providing Christmas boxes for the needy.

This proceeding was tried in the circuit court as an action at law. Special findings were made and the judgment entered was based on such findings. The appellants assert that a proceeding of this nature is properly one in equity, and that this court should try the case *de novo*. In support of this proposition, they direct our attention to *In re Wakefield's Estate*, 161 Or. 330, 87 P. (2d) 794, 89 P. (2d) 592, wherein this court on petition for rehearing held that the proceeding therein for escheat of the estate was one in equity. The ruling in that case was based on § 21-101, O. C. L. A. In that instance the state land board had appeared in the probate proceedings and asserted that there were no heirs.

■ The case at bar was brought as an original proceeding in the circuit court pursuant to §§ 21-105 to 21-108, inclusive, O. C. L. A., which provide for a

jury trial and for entry of judgment. Such a proceeding has been construed by this court as an action at law and not a suit in equity: *State v. McDonald*, 55 Or. 419, 103 P. 512, 104 P. 967, 106 P. 444. As far as this particular litigation is concerned, the ultimate result would be the same, for the reason that the facts herein are not disputed and do not permit varying inferences to be drawn.

The defendants do not contend that by the incorporation of Sunbeam Rebekah Lodge, which was effected after the death of the testator, the corporation acquired any greater right to the real property than the unincorporated association possessed. Their argument is that the will of James Eddie created a charitable trust and that if the court should decide that the unincorporated lodge was incapable of taking title to the real property or acting as trustee of the trust, the court should appoint the corporation as such trustee.

In regard to the right of an unincorporated association to hold real property, we find in 7 C. J. S. 38, § 14, this statement:

> "In the absence of a statute empowering it to do so, it is ordinarily held that an unincorporated association, having no legal existence independent of the members who compose it, is incapable, as an organization, of taking or holding either real or personal property in its associate name, and that a conveyance to an unincorporated association passes title to no one; but there is some authority to the contrary, and it has been held that an unincorporated association may take and hold personal property at least to the extent that the person giving or selling such property can not retake it or otherwise dispose of it.

"In any event, the members of a voluntary association may take and hold property jointly as individuals, and accordingly a grant to an association [by] name may, under the circumstances, be construed as a grant to its members, and a gift to an association by name, if not impressed with any trust or charitable use, may vest in the persons composing the society."

The following language is found in 5 R. C. L. 313, § 29:

"The objections at common law to a voluntary association's taking title to real estate or to a permanent fund are so nearly insurmountable that there is very great uniformity in the rulings that in the absence of some trust device the conveyance to such association of such property is void."

See also, in this connection: 5 C. J. 1343, § 32; 4 Am. Jur. 477, § 35; 14 C. J. S. 468, § 34; and annotation, 32 L. R. A. 625.

This court does not appear to have passed directly upon the question of whether an unincorporated association is capable of taking title to real property. In *Liggett v. Ladd*, 17 Or. 89, 95, 21 P. 133, however, is the following enunciation, although it may be regarded more as dictum than as the law of the case:

"Mere voluntary associations, however, can not take the title to real property in their society name, as they are not in law regarded persons, but it may be held for their use and benefit by trustees, and the right to the enjoyment of the property be secured in that way. Such trustees, as I view it, may be artificial persons as well as natural ones. If this is correct, then, while the Methodist Episcopal Church South could not, in consequence of its being unincorporated, take the legal title to real property, yet it could secure the benefit of the

property by having the legal title to it conveyed to a corporation for its use."

In that case the church mentioned caused the formation of a corporation known as "Corvallis College" and had real property conveyed to the corporation.

The opinion in *Trustees of M. E. Church v. Adams,* 4 Or. 76, 83, contains this statement:

"I do not hold that such societies [unincorporated religious organizations] can take and execute a trust. As societies they can not be trustees so as to be vested with legal title. It was decided in the case of the Baptist Association v. Hart's Executors (4 Wheat. 1) that a voluntary association was incapable of taking and executing a trust, and, so far, that decision is approved. Nor can such an association take or hold title to real estate. An unincorporated society is not competent to take an estate in fee."

The facts in that case were, briefly, the following: James Bates and his wife executed and delivered to E. E. Parrish a deed to a tract of land for the purpose of holding title to it for a certain church of the town of Jefferson. Parrish was a member of the church but not one of its trustees. Later, to carry out the purpose of the trust, Parrish conveyed the tract of land to the trustees of the church. The suit was brought to have corrected a misdescription in the deed from Bates and his wife to Parrish and in the deed from Parrish to the trustees.

In support of their contention that the devise of real property to the unincorporated lodge was valid, the defendants cite and rely upon the following authorities: *Hartman v. City of Pendleton,* 96 Or. 503, 186 P. 572, 190 P. 339, 8 A. L. R. 904; *Town of Gravette*

*v. Veach,* 186 Ark. 544, 54 S. W. (2d) 704; and § 79-302, O. C. L. A.

The Hartman case involved a contest between the Commercial Association of Pendleton and the City of Pendleton, as to which was entitled to the benefit of a bequest of $5,000 made by the will of Samuel P. Sturgis to James A. Fee and Edward D. Boyd as trustees. A provision of the will required the trustees to use the income from the trust fund for the benefit of the library of the Commercial Association of Pendleton, an unincorporated society. It was pointed out in the opinion of the court to "be fairly well settled law" that an unincorporated association might take and hold personal property, and that: "Such associations would be treated in equity as *quasi* partnerships, each member of which would be entitled to an interest in the property donated or purchased." No question of an unincorporated association's taking title to real property was involved in that case, and what was said about the treatment of such an association as a *quasi* partnership was not necessary to the decision.

The facts in the case of *Town of Gravette v. Veach,* supra, were, in brief, these: A number of women residents of Gravette who were interested in providing park facilities for the town organized themselves as an unincorporated society, called Civic Improvement Club. They were instrumental in raising a fund of $1,500, with which a tract of land was purchased for park purposes and the title thereto taken in the name of Dr. Buffington, mayor of Gravette. Dr. Buffington conveyed the property to the city by a warranty deed, in which was inserted this provision: "The above described property is to be used for public park purposes and is to be under control of the ladies of Civic Improvement Club of Gravette." The court ruled that

the city held the legal title to the property for the benefit of the public and that the use of the property was to be administered through the Civic Improvement Club. There was not involved in that case any question of whether an unincorporated society could hold title to real property, although the court did say that in that jurisdiction such an organization could take "the beneficial interest in real estate" or hold the same as trustee for benevolent uses.

Section 79-302, O. C. L. A., provides that when title to real property is in the name of a partnership any of the partners may pass title to such property by a conveyance executed in the partnership name. The defendants argue that this section of the code recognizes that an unincorporated association is capable of taking title to real property, and further contend that the members of the unincorporated Sunbeam Rebekah Lodge were partners. The section mentioned is a part of the uniform partnership act, adopted in 1939: Oregon Laws 1939, chapter 550. Section 6 of the act, now codified as § 79-201, O. C. L. A., contains this definition of "partnership": "(1) A partnership is an association of two or more persons to carry on as co-owners a business for profit. (2) But any association formed under any other statute of this state, or any statute adopted by authority, other than the authority of this state, is not a partnership under this act, unless such association would have been a partnership in this state prior to the adoption of this act".

■ It can not be said that the unincorporated lodge was a partnership within the meaning of the law cited, inasmuch as the members of the lodge were not associated together for the purpose of carrying on any business for profit, nor did such an association constitute a partnership prior to the enactment of that law.

Therefore, the provisions of the uniform partnership act on which counsel for the defendants rely do not aid us in the solution of the question here presented.

In the Restatement of the Law of Trusts, Vol. 2 at page 1172, we find this rule:

"At common law an unincorporated association as such can not take or hold the legal title to land and can not therefore take or hold land in trust."

It is our conclusion that Sunbeam Rebekah Lodge No. 180, an unincorporated association, was incapable of taking title to or holding the real property here involved.

There are, however, a very few cases holding that when a conveyance of real property is made to an unincorporated association in its name as such, under particular circumstances described, the title will be deemed to vest in the individual members of the association. In some of those adjudications the facts recited show that the associations named as grantees actually were partnerships. See, for example, *Beaman v. Whitney*, 20 Me. 413, wherein the conveyance was to Whitney, Watson & Company. Both Whitney and Watson were well known, and the court ruled that they would take title to the real property and "would hold for themselves and in trust for those associated with them".

In the case of *Byam v. Bickford*, 140 Mass. 31, 2 N. E. 687, it was held that the members of the association would take title to real property as tenants in common. The plaintiffs and the defendant therein were "members of a voluntary unincorporated association known as the South Chelmsford Hall Association, acting under certain articles and bylaws, for the purpose of erecting a hall" for public purposes.

Two of the members executed a deed for a parcel of land, naming as grantee "South Chelmsford Hall Associates", by which, the parties agreed, the South Chelmsford Hall Association was meant. In regard to the conveyance the court said:

> "It is probable that, in making the deed, it was supposed that, although unincorporated, this association, as such, was capable of taking and holding real estate. While there are certain unincorporated societies which may, as such, take and hold real estate by statute, this society does not belong to that class. * * * The general rule therefore applies to it, and it is not qualified to take, as such, real estate as grantee. [Authorities cited.] But the South Chelmsford Hall Association was a body well known, all the members of which could be ascertained; and, as it could not take as a corporation, the deed may properly be construed as a grant of the estate to those who were properly described by this title, especially as the grant is to the 'Associates,' a term deemed by the grantors to mean the same as 'Association.' The persons associated in the society were thus tenants in common of the land conveyed."

The other cases cited in the footnote to the excerpt from 7 C. J. S. 38, § 14, hereinabove quoted, and in the footnote to the corresponding section, 5 C. J. 1343, § 32, *supra*, involved personal and not real property; and in some instances the association was a partnership conducting business for profit.

■ We are not willing to follow in this case the ruling in *Byam v. Bickford*, supra, by holding that title to the real property attempted to be devised to the lodge became vested in the members of the lodge as tenants in common. The membership of Sunbeam Rebekah Lodge is not fixed. New members are continually being

added and old members "lost", according to the testimony. The objection to the lodge members' holding title is as "nearly insurmountable" as that to a voluntary association's taking title to real estate.

■ The remaining question for decision is whether or not a charitable trust was created by the will of James Eddie, deceased. The will itself makes no provision as to how the property of the testator is to be used by Sunbeam Rebekah Lodge. Nevertheless, if the objects and purposes of the donee or devisee are wholly charitable, a gift or devise to it will be treated as one for charity: Restatement of the Law of Trusts, Vol. 2, page 1194, g. Invoking this doctrine, the defendants contend that Sunbeam Rebekah Lodge is a charitable association and therefore the devise to it of James Eddie's real property created a charitable trust.

■ We have already set out the objects and purposes of the lodge, as stated in its constitution and ritual. One such purpose or object is, "To cultivate and extend the social and fraternal relations of life among the lodges and families of Odd Fellows", which can not be classed as charitable. The other purposes of the lodge may be construed as charitable. We note accordingly that the purposes of the organization are both charitable and otherwise. The only definite provision for application of the lodge's funds to a purely charitable purpose is the requirement that what amounts to fifteen per cent of the annual dues be devoted to the support and maintenance of the Odd Fellows home. All the balance of the lodge's funds or income may be expended for social and fraternal functions and diversions. Furthermore, even though the cultivation of social and fraternal relations be regarded as benevolence, it is not an exclusively charitable endeavor.

Benevolence is not the equivalent of charity, but "embraces objects and purposes which are not charitable": *In re Johnson's Estate*, 100 Or. 142, 196 P. 385, 1185, and cases therein cited; *First National Bank in Dallas v. Commissioner of Internal Revenue*, 45 F. (2d) 509; *Mason v. Perry*, 22 R. I. 475, 48 A. 671.

■ Our conclusion is that James Eddie died intestate in so far as his real property is concerned, and without heirs, and that upon his death the real property involved herein escheated to the state of Oregon: *In re Ohlsen's Estate*, 158 Or. 197, 75 P. (2d) 6. The judgment appealed from is accordingly affirmed.