2016 ND 85

**The NEXT STEP, Plaintiff and Appellant**

v.

**Jamie REDMON, Defendant and Appellee.**

No. 20150333.

Supreme Court of North Dakota.

May 26, 2016.

Benjamin C. Pulkrabek, Mandan, ND, for plaintiff and appellant.

Tom P. Slorby, Minot, ND, for defendant and appellee.

KAPSNER, Justice.

[¶ 1]   The Next Step appeals from a judgment entered after the district court dismissed its quiet title action. We affirm, concluding unincorporated associations are incapable of holding title to real property.

I

[¶ 2]   The Next Step, an unincorporated association, and Jamie Redmon, an individual, both claim title to residential real property located in Minot. Both parties claim ownership through different quitclaim deeds they allege were executed by the prior owner of the property. The relevant conveyances follow:

> Quitclaim deed by Orlin Swensrud to Holly Gates. Recorded in 1999.
>
> Quitclaim deed by Holly Gates to Daniel Foster. Recorded in 2008.
>
> Quitclaim deed by Daniel Foster to The Next Step. Dated 2009. Recorded in 2014.
>
> Quitclaim deed by Daniel Foster to Jamie Redmon. Dated and recorded in 2013.

Redmon alleged the quitclaim deed to The Next Step was forged. Holly Gates, a co-founder of The Next Step, asserted it was not. The Next Step moved for summary judgment, and Redmon filed a response. The district court did not immediately rule on the motion; it instructed the parties to provide supplemental briefing on the issue of whether unincorporated associations are capable of holding title to real property in North Dakota. After the parties provided their supplemental briefs, the court entered an order dismissing the case. The court held unincorporated associations are incapable of holding title to real property in North Dakota. The Next Step appeals.

II

[¶ 3]   The Next Step argues the common-law rule prohibiting unincorporated associations from holding title to real property has been eroded. Redmon concedes courts have created exceptions to the common-law rule, but she asserts none are applicable in this case. "Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record." *Hamilton v. Woll*, 2012 ND 238, ¶ 9, 823 N.W.2d 754.

[¶ 4]   An unincorporated association is: "An unincorporated organization that is not a legal entity separate from the persons who compose it." *Black's Law Dictionary* 141 (9th ed.2009). Absent the exceptions discussed below, unincorporated associations are incapable of holding title to real property because they are not legal entities. "The reasoning behind this common-law rule is sound: there must be some legal, identifiable party holding the interest who is responsible for liability arising out of that ownership interest." *Winchell v. Montana Dep't of State Lands*, 262 Mont. 328, 865 P.2d 249, 252–53 (1993).

A voluntary unincorporated association may be nothing more than individuals joining together based merely on common purpose or interest. Thus, it is

a maxim of the common law that, in the absence of statutory authority, such an association has no legal existence independent of those members who comprise the organization. Such being the case, the association at common law cannot, in its own name, (1) enter into contracts, (2) take, hold, or transfer property, or (3) sue or be sued.

*Rock Creek Gardens Tenants Ass'n v. Ferguson*, 404 A.2d 972, 973 (D.C.1979) (citations omitted). *See also* North Dakota Title Standards (2012), Standard 2–19 ("A conveyance to an unincorporated association does not vest title in such association."); 2 Patton and Palomar on Land Titles § 416 (3d. ed.2015).

[¶ 5] The Next Step argues: "Since *Askew [v. Joachim Mem. Home*, 234 N.W.2d 226 (N.D.1975) ] the common law no longer applies to unincorporated associations and their ability to enter into contracts, to sue and be sued, to deny their existence." In *Askew*, we modified the common law to allow unincorporated associations to be sued when they have held themselves out to be legal entities; we based our holding on the principle of estoppel. An architect sued Joachim Memorial Home, an unincorporated nursing home, for damages the architect incurred after the nursing home abandoned a construction project. *Askew*, at 230–31. The nursing home argued it was immune from suit because it was an unincorporated association. *Id.* at 233. We recognized unincorporated associations could not be sued at common law. *Id.* at 234. But we determined the doctrine of estoppel precluded the nursing home from avoiding the lawsuit because the nursing home had held itself out as a legal entity conducting business. *Id.* at 235–36. We concluded "that an association doing business as a legal entity may, if the facts and circumstances warrant, be estopped to deny its own existence." *Id.* at 236.

[¶ 6] *Askew* did not abrogate the common law's prohibition on unincorporated associations holding title to real property. *Askew* simply created an equitable exception to the common-law rule to be applied when "the facts and circumstances warrant." *Askew*, 234 N.W.2d at 236. The logic behind the common law's prohibition of unincorporated associations' ownership of real property is still persuasive after *Askew*. "[T]here must be some legal, identifiable party holding the interest who is responsible for liability arising out of that ownership interest." *Winchell*, 865 P.2d at 253. Otherwise, individuals would be able to conceal their identity and escape liability flowing from property ownership by simply holding property in the name of an unincorporated association.

### III

[¶ 7] The Next Step asserts that, even if the common-law rule has not been abrogated, this case warrants an exception. It argues we should either (1) adopt an exception that allows courts to construe a conveyance to an unincorporated association to vest ownership in the association's members, or (2) adopt an exception that allows courts to construe such conveyances to be held in trust for the association. We conclude these exceptions are inappropriate for this case, and we adopt neither.

### A

[¶ 8] The first exception allows a court to construe a grant to an unincorporated association to vest ownership in the association's members when those members are ascertainable. The Montana Supreme Court has described the exception:

[W]hen an unincorporated association purportedly owns property, the presence of "identifiable trustees" of the association makes for a group that can take

responsibility for the duties of ownership, and that therefore possess the land in lieu of the association.

*Edwards v. Burke*, 324 Mont. 358, 102 P.3d 1271, 1275 (2004). The United States Court of Appeals for the First Circuit has explained this exception only applies when the association's membership is ascertainable:

[The common-law rule] is not absolute. Courts may determine that ownership vests in the individuals who comprise the organization....

In *Byam v. Bickford*, [140 Mass. 31, 2 N.E. 687 (1885) ], real property was permitted to vest in an unincorporated association's members because all of the members could be ascertained. In contrast, where membership is not fixed and new members are continually being added and lost, such vesting has not been allowed. *State v. Sunbeam Rebekah Lodge No. 180*, 169 Or. 253, 127 P.2d 726 (1942). Without this limitation of an ascertainable membership, the public, or even the members of the association, would not have notice or be cognizant of who claimed ownership in a particular property.

*Motta v. Samuel Weiser, Inc.*, 768 F.2d 481, 486 (1st Cir.1985).

[¶ 9] In this case, The Next Step has not proffered any bylaws or membership requirements. The district court was unable to ascertain which individuals comprise the association or what individual member's roles were: "Who are the trustees? Who are the members? Which trustees and which members have the right to speak for the association, and to contractually bind it?" We conclude the ascertainable beneficiary exception does not apply to this case, and we decline to adopt it.

## B

[¶ 10] Under another exception to the general rule, courts have construed bequests to charitable unincorporated associations to be held in trust when the bequest is for a charitable purpose. In other words, they have applied the doctrine of cy pres: "The equitable doctrine under which a court reforms a written instrument with a gift to charity as closely to the donor's intention as possible, so that the gift does not fail." *Black's Law Dictionary* 444 (9th ed.2009).

By the great weight of authority, a devise or bequest to an unincorporated charitable association does not fail, rather the court will appoint a trustee to administer the bequest or devise.... The implication of a trust when property is bequeathed or devised to an unincorporated charitable association best effectuates the intent of the testator and is in accord with the general philosophy of the cy pres doctrine.

*Estate of Anderson*, 571 P.2d 880, 882–83 (Okla.Civ.App.1977) (citations omitted). An early North Dakota case has recognized a lease executed in the name of an individual to be held in trust for an unincorporated association was valid. *See Piper v. Taylor*, 48 N.D. 967, 188 N.W. 171 (1922).

[¶ 11] There are cases in which courts have relied on cy pres to reform charitable bequests to unincorporated associations. *See Sunbeam*, 127 P.2d at 731; *In re Andrejevich's Estate*, 57 N.Y.S.2d 86, 87 (1945). However, we have not found any cases, and The Next Step has cited to none, in which a court has used cy pres to reform an inter vivos transfer to an unincorporated association. We conclude the cy pres exception is inapplicable here. The conveyance is a quitclaim deed—not a post-mortem bequest—and it does not express a charitable purpose.

## IV

[¶ 12] Unincorporated associations are not legal entities; unless an association can establish an exception applies, it is incapable of holding title to real property. The district court properly dismissed The Next Step's quiet title action. We affirm.

[¶ 13] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.