No. 88-249

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

_____

THOMAS J. WINCHELL AND DAVID WINCHELL,

        Plaintiffs and Respondents,

-vs-

STATE OF MONTANA, DEPARTMENT OF
STATE LANDS,

        Defendants and Appellants.

_____

APPEAL FROM:  District Court of the Seventh Judicial District,
In and for the County of Dawson,
The Honorable Dale Cox, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Lyle Manley, Dept. of State Lands, Helena, Montana

    For Respondent:

        Thomas E. Smith; Moulton, Bellingham, Longo & Mather,
Billings, Montana

_____

Submitted on Briefs:  Sept. 29, 1988

Decided: November 29, 1988

Filed:

_____

FILED
'08 NOV 29 PM 12 35
MONTANA SUPREME COURT

*Ethel M. Harrison*

_____
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

A writ of prohibition was filed by the Honorable Dale Cox, Seventh Judicial District Court, Dawson County, restraining and prohibiting the Department of State Lands from (1) cancelling State Lease No. 0343 for nonpayment of agricultural rentals, (2) re-leasing the property to other parties, and (3) taking action for trespass against the plaintiffs. The court found that the property in dispute was leased for grazing only and the Department of State Lands (hereinafter Department) was in excess of its jurisdiction for cancelling the lease for nonpayment of agricultural rental. The Department appeals. We affirm.

The issue on appeal is whether the District Court erred in issuing the writ prohibiting appellants from cancelling the lease.

Thomas J. Winchell and David Winchell are both residents of Dawson County, Montana. The Department leased 477.9 acres to the Winchells in 1981 for grazing purposes. The lease was scheduled to operate from February 28, 1981, to February 28, 1991.

In the fall of 1980, the Winchells had written the United States Soil and Conservation Service requesting help in developing a water-spreading system. Roy Henderson, Chief of the Resource Development Bureau of Land Administration of the Department of State Lands, explored the possibility of developing the water-spreading project.

Section 77-1-209, MCA, promulgates that the Board of State Lands may prescribe rules relating to the leasing of state lands which contribute to the highest attainable measure to the purpose for which they were granted to the State of Montana. Section 77-1-102, MCA, grants to the Board the power to classify and reclassify state lands. Along these

2

lines, ARM § 26.3.126 requires that anyone who wishes to reclassify land use must apply to the Department. The Department conducts a capability inventory of the tract to determine whether reclassification is in the best interests of the state. Development of a water-spreading project would require the Department to consider capability and reclassification.

The Department agreed that the project was feasible and thirty-two acres were set aside to be converted from native range land to irrigated hay land through installation of water-spreading dikes. The Department invested approximately $1,300 into the project, to be paid back by the Winchells. In 1981, after the lease had taken effect, the Department and the Winchells entered into a Supplemental Lease Agreement designating thirty-two acres as agricultural land, with the remaining 445.9 acres to continue as grazing land. The supplemental agreement also stated that the Winchells, as lessees, would:

> Pay the State Land Department the greater of 1/4 crop share or a minimum cash payment of $20.00 per acre. The Lessee agrees and understands that the above rental is to be paid on or before November 1st of each year. The State agrees to forego the $20.00 per acre stipulation the year hay is seeded and require only the standard statutory rental of 25% crop share on the developed acres. The second growing year of the initial seeding of developed acres, and for the balance of the lease term, the greater of 25% crop share or $20.00 per acre shall be applicable.

On the original lease form appeared a handwritten note showing that the thirty-two acres had been reclassified by the Department as agricultural.

In 1983 the Winchells concluded that the water source for the project was inadequate for producing a profitable alfalfa crop at the higher agricultural rental rates. They negotiated to pay back the loan for the thirty-two acre development in a lump sum settlement of $1,920. They then reverted the land to grazing.

In a letter dated April 10, 1984, Roy Henderson informed Tom Winchell that he had received the lump sum payment of $1,920 on March 30, 1984, and that the Supplemental Lease Agreement was null and void. He also stated in the letter:

> Your rental on this portion of ground will now be the current AUM [Animal-Unit-Month] rate if in grazing or the statutory crop-share (currently 1/4 crop-share), if used for agricultural purposes. Since you indicated that the project site was returned to pasture, I have asked that this area be reappraised this year, so a correct AUM rate can be assigned.

The indications from this letter are that lessees were now grazing on this land again and the Department would reclassify the land to grazing. With no other agreements supplementing the original lease agreement, the thirty-two acres reverted back to grazing land. Furthermore, Henderson's own notes taken from telephone conversations with lessees confirmed the return to grazing land. Kelly Blake, Administrator of the Land Administration Division of the Department, knew and approved the arrangement.

After the lump sum had been paid, Sharon Moore, a land specialist at the Department's Eastern Land Office in Miles City, inspected the site for reappraisal purposes to see if the land should remain classified as agricultural or be used for grazing. She recommended that the thirty-two acres retain the agriculture classification.

4

In 1985 the Winchells went into bankruptcy. Before the Department sought relief in Bankruptcy Court, it sent a letter to lessees stating that the land was over-grazed and they owed one-fourth crop share for harvested alfalfa on the reclassified thirty-two acres.

Following the letter, the Department obtained a stipulation from the Bankruptcy Court which promulgated that there was to be no grazing on the land at issue and that they were to pay the one-fourth crop share owing on alfalfa cut from the thirty-two acres. The Department cancelled the lease pursuant to § 77-6-210, MCA, mismanagement of the lease. The court later lifted the stay, and, as a result, the Department held an administrative hearing regarding the cancellation of the lease. The hearing examiner found that the agricultural status was the proper classification and the lessees had mismanaged the lease because they had failed to harvest the alfalfa crop and failed to pay proper rental. The Montana Board of Land Commissioners adopted the hearing examiner's findings on February 25, 1988. Lessees did not harvest the alfalfa crop or pay the crop share payments but continued to pay grazing rental.

Lessees petitioned the District Court for a writ of prohibition against automatic cancellation of the lease pursuant to § 77-6-506, MCA, not in opposition to the hearing examiner's findings of mismanagement. Section 77-6-506(2) provides that rental for agricultural land is due on or before November 15th of the year in which the crop is harvested. If payment is not made by December 31st, the lease is automatically cancelled.

The question brought by the appellant is whether the District Court erred in issuing the writ of prohibition, restraining and prohibiting the Department from cancelling State Lease No. 0343 for nonpayment of agricultural rentals,

from re-leasing the property to other parties, and from taking action in trespass against the lessees.

Appellant stresses that the legislative intent behind revenue collected from leased state lands is that it is primarily "held in trust for the support of education and for the attainment of other worthy objects helpful to the well being of the people of this state." Section 77-1-202, MCA. We held in Department of State Lands v. Pettibone (Mont. 1985), 702 P.2d 948, 42 St.Rep. 869, that anyone acquiring interest in property does so subject to the trust. Moreover, § 77-1-402, MCA, provides that "classification or reclassification shall be so made as to place state land in the class which best accomplishes the powers and duties of the board as specified in 77-1-102 and 77-1-203(1)."

We hold that the District Court was not in error in issuing the writ of prohibition. We also hold that the Department was overreaching in its discretion in applying § 77-6-506, cancelling the lease solely for nonpayment of the agricultural lease charges.

The power of the Department to classify and reclassify a lease is not without limit. As a case of first impression, it is important to carefully scrutinize the applicable statutory language. Although § 77-1-202, MCA, states that the land is held in trust for the support of education, and § 77-1-402, MCA, provides that classification is to be made as to accomplish the powers and duties of the board, the trust powers are limited. For example, § 77-1-402, MCA, also states:

> When state lands are classified or reclassified in accordance with these duties and responsibilities, special attention shall be paid to the capability of the land to support an actual or proposed land use authorized by each classification.

6

Section 77-1-203(1), MCA, expresses that:

> (a) [The state lands] are utilized in that combination best meeting the needs of the people and the beneficiaries of the trust, making the most judicious use of the land . . .

In the case on appeal, the capability of the land to support the proposed agricultural land use was improbable as shown by the lessees. Originally, the Department accepted that the land was incapable of a strong alfalfa crop. The lessees negotiated to pay back the loan to the Department and return the land to grazing because growing of alfalfa was not profitable.

Section 77-1-202, MCA, requires that the board administer the tract "to secure the largest measure of legitimate and reasonable advantage to the state." The legitimate and reasonable advantage to the state is to charge grazing rental rates for the thirty-two acres in question. It would be unconscionable to charge the Winchells with agricultural crop-share rentals when the water source is insufficient to grow alfalfa and when the crop is not profitable for the lessees. To do so might prevent other potential lessees from applying for leases, fearing that the Department will charge unaffordable rental rates. The state trust is then without any funds.

The original lease agreement does not require payment of agricultural rentals. The supplemental lease reclassified thirty-two acres as agricultural. But once the investment loan was repaid by the lessees and once the Department declared the supplemental lease agreement null and void, the original lease agreement controlled. This original lease stated that the total 477.9 acres was classified as grazing land. The state cannot now insist the lessees pay agricultural rates simply because it is more profitable to the state

7

trust fund without an agreement which reclassifies the tract. To do so would be incongruous. The Department has acted in excess of its jurisdiction in cancelling the lease for non-payment of agricultural rentals under § 77-6-506, MCA, advertising to re-lease the property, re-leasing the property, and taking action in trespass against the lessees.

Appellants also claim that the District Court is in error for not considering the hearing examiner's findings in the MAPA hearing. The hearing, held on June 11, 1987, was brought on the grounds that the lease had been mismanaged, in violation of § 77-6-210, MCA. This writ of prohibition, however, was brought to the District Court regarding § 77-6-506, MCA, automatic cancellation of the lease for nonpayment of agricultural rentals.

In Nasi v. Dept. of Highways (Mont. 1988), 753 P.2d 327, 45 St.Rep. 710, we held that res judicata applies when an administrative body resolves issues of fact correctly. On appeal, the District Court must apply the hearing examiner's findings. However, in the case at bar, the cause of action is different. Nasi required application of res judicata if: (1) the parties are the same, (2) the subject matter is the same, (3) the issues are the same and (4) the relationship among the parties, the subject matter, and the issues are the same. Here the parties are the same as is the subject matter. The issues and the relationship of the issues and subject matter are different. The first action before the hearing examiner was to discuss cancellation of the lease because of mismanagement. The action for writ of prohibition is brought in opposition to automatic cancellation for non-payment of agricultural rentals. This action is brought by the lessees to prohibit automatic cancellation and the statutes are different. The relationship of the issues and subject matter are dissimilar. Therefore, the District Court

8

was under no obligation to apply the findings of the hearing examiner as adopted by the Board of Land Commissioners.

In conclusion, the District Court acted properly in issuing a writ of prohibition against the Department. The original lease agreement classified the land for grazing. Since the lessees have continued paying grazing rental, they are entitled to use the land in the manner provided by the lease, subject to all other remedies available to the Department.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

Mr. Justice R. C. McDonough and Mr. Justice John C. Sheehy did not participate in this decision.