No. 93-311

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

DAVID WINCHELL,

      Petitioner and Respondent,

-v-

MONTANA DEPARTMENT OF STATE LANDS
and BOARD OF LAND COMMISSIONERS,

      Respondents and Appellants.

APPEAL FROM:   District Court of the Seventh Judicial District,
In and for the County of Dawson,
The Honorable Dale Cox, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

         Lon J. Maxwell, Special Assistant Attorney General,
Department of State Lands, Helena, Montana

      For Respondent:

         Lorraine A. Schneider, Simonton, Howe & Schneider,
Glendive, Montana

FILED

Filed: DEC 07 1993

*Ed Smith*
CLERK OF SUPREME COURT.
STATE OF MONTANA

Submitted on Briefs:   October 21, 1993

Decided:   December 7, 1993

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Respondents/Appellants appeal from an order of the Seventh Judicial District Court, Dawson County, denying their Motion to Alter or Amend Judgment. We affirm in part and reverse in part.

We state the dispositive issues on appeal as follows:

1. Is the petitioner entitled to an evidentiary hearing after the respondents refused to consider his bid for a state land lease?

2. Can an unincorporated association lease state land?

The history of the litigation between these parties is set forth in Winchell v. Dep't of State Lands (1988), 235 Mont. 10, 764 P.2d 1267 (Winchell I), and Winchell v. Dep't of State Lands (1990), 241 Mont. 94, 785 P.2d 212 (Winchell II). The land which is the subject of these actions is school trust property which the Department of State Lands and the Board of Land Commissioners (collectively referred to as DSL) lease to private parties.

In 1988, DSL canceled a state land lease it had with the petitioner David Winchell (Winchell) and his brother, Thomas Winchell. The grounds for cancellation were that the Winchells had grossly mismanaged the real property which was the subject of the lease. The cancellation of this lease was upheld by this Court in Winchell II.

After Winchell II was decided, DSL advertised for bids on the tract of land which had previously been leased to the Winchells. Two advertisements failed to produce responses, so DSL reclassified the land from grazing land to wildlife habitat. In June, 1991, the

2

land was again advertised for bids. Two bids were received: one from Winchell for $1,524.50, and one from the Dawson County Pheasants Forever (DCPF) for $511.35.

DSL refused to consider the bid from Winchell, citing 26.3.142(6), ARM, which states that a person who has had a lease canceled for any reason other than the nonpayment of rent is not allowed to bid upon a lease. DCPF was then notified that its bid was accepted and that, before the new lease could be issued, DCPF would have to pay the Winchells for any leasehold improvements, as required by §§ 77-6-301 et seq., MCA. Direct negotiations for payment of the improvements between the Winchells and DCPF failed, so the parties resorted to arbitration. In the middle of that process, Winchell filed a Petition for Writ of Prohibition and For Stay of Arbitration Proceedings against DSL.

The District Court granted Winchell's petition and issued a writ restraining DSL from issuing the new lease to DCPF. The District Court also stayed the arbitration proceedings. DSL moved to quash the writ, which was denied.

A show cause hearing was held on the petition on August 10, 1992. After that hearing, the District Court issued Findings of Fact, Conclusions of Law, and an Order in which the court ordered DSL to reject the bid of DCPF because it was not a legal entity and could not hold a leasehold interest in real property. The District Court also ordered DSL to give Winchell an evidentiary hearing with respect to the new lease.

In response to this order, DSL filed a Motion to Alter or

Amend Judgment. This motion was denied, and the District Court ordered DSL to comply with the initial order. From the denial of that motion, DSL appeals.

Our standard of review relating to conclusions of law is whether the trial judge's interpretation of the law is correct. Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.

## I - EVIDENTIARY HEARING/REFUSAL TO CONSIDER BID

DSL contends that the District Court erred in granting Winchell an evidentiary hearing on the propriety of refusing to consider his bid for the state land lease. We agree.

The only provision for a hearing after a bid is rejected is in the case of the renewal of leases. See § 77-6-205, MCA. In that case, the prior lease holder, who has a preferential right to re-lease the land, may exercise the preferential right and request a hearing if he or she believes the high bid is excessive. Section 77-6-205(2), MCA. However, the prior lease belonging to Winchell was canceled. Thus, this is not a case involving a lease renewal and the exercise of a preferential right. Therefore, the hearing provisions of § 77-6-205(2), MCA, do not apply. Clearly, Winchell was not entitled to an evidentiary hearing based upon this renewal statute.

In the case of a new lease, such as the one at issue, competitive bidding generally governs which bid is accepted. Section 77-6-202, MCA, provides, in pertinent part:

When the department receives an application to lease an unleased tract, it shall advertise for bids on the tract.

4

> The tract shall be leased to the highest bidder unless
> the board determines that the bid is not in the state's
> best interest for the reasons set forth in 77-6-205(2).
> If the high bid is rejected, the board shall set forth
> the reasons for the rejection in writing. . . .

This statute clearly requires that, if the high bid is not accepted, the board must set forth its reasons for rejecting that high bid in writing. Again, there is no statutory provision allowing an evidentiary hearing to be had after a high bid is rejected.

According to § 77-6-202, MCA, DSL can only reject a high bid if doing so is in the State's best interest pursuant to § 77-6-205(2), MCA. As we pointed out above, § 77-6-205, MCA, and the procedure set forth therein pertain to the renewal of leases as opposed to leases of unleased tracts. Nonetheless, in § 77-6-202, MCA, which does pertain to leases of unleased tracts, the legislature has specifically chosen to incorporate the "best interest" and "duty" standards of § 77-6-205(2), MCA, as the basis for rejecting the high bid on an unleased tract. Section 77-6-205(2), MCA, provides, in pertinent part:

> [A] bid is not in the best interest of the state [if] it
> is above community standards for a lease of the land,
> would cause damage to the tract, or would impair its
> long-term productivity . . . It is the duty of the board
> to secure the best lessees possible, so that the state
> may receive the maximum return possible with the least
> injury occurring to the land.

If DSL rejects a high bid based on the standards enunciated above, it must, under § 77-6-202, MCA, set forth the reasons for its rejection in writing.

In this case, DSL did not make written findings that

5

Winchell's high bid was not in the best interest of the State because it either (1) was too high for community standards; (2) would cause damage to the land; or (3) would impair long-term productivity. Rather, DSL out-of-hand refused to consider Winchell's bid at all, based upon 26.3.142(6), ARM, which states:

> Any person who has had his lease or license cancelled and not reinstated by the board or department for any reason except nonpayment of rentals shall not be allowed to bid upon the lease or license or upon any lease or license for land managed by the department. If no other bids are received, the former lessee or licensee may be allowed to bid, but the board may reject any or all bids from a lessee or licensee who has had his lease cancelled in the past.

DSL contends that this regulation absolutely prohibits Winchell from bidding on any state land leases, and that it legitimately refused to consider his bid. With that conclusion, we disagree.

Section 77-6-108, MCA, contains certain proscriptions against those who may lease state lands. This section provides only that:

> No person may lease state lands, except one who is the head of a family, unless he has attained the age of 18 years. Any such person and any association, company, or corporation authorized to hold lands under lease may lease state lands and may hold more than one lease to state lands.

Importantly, there is no proscription contained in the statute that one whose lease has been previously canceled may not thereafter bid on or lease state lands.

Likewise, there is no such proscription in § 77-6-202, MCA, which, as discussed above, allows DSL to reject a high bid only on the basis of a written finding of violation of the standards set forth in § 77-6-205(2), MCA. Again, those standards do not contain any proscription disallowing the bid or ability to lease of one

6

whose lease has been previously canceled.

Finally, none of the various sections in Title 77, Chapter 6, MCA, pertaining to the cancellation of leases by DSL contain any provision that, once a lease has been canceled, the offending lessee may not, thereafter, bid upon or lease state lands.

Simply put, there is no statutory authority in Title 77, Chapter 6, MCA, which disallows a lessee whose lease has been canceled from bidding on a new lease or leasing state lands. The administrative regulation which purports, in essence, to give DSL the ability to refuse to even consider a bid, 26.3.142(6), ARM, is in derogation of the cited statutes and is, therefore, unlawful to that extent. See: Bick v. State (1986), 224 Mont. 455, 457, 730 P.2d 418, 420 ["[A] statute cannot be changed by administrative regulation."]

We recognize the importance and great value of school trust lands to the State. See Dep't of State Lands v. Pettibone (1985), 216 Mont. 361, 702 P.2d 948. Unquestionably, in discharging their fiduciary duty to manage state trust lands according to the highest standards, the Board of Land Commissioners and DSL, under the direction of that Board, exercise considerable discretionary powers. See §§ 77-1-202 and 77-1-301, MCA; State ex rel. Gravely v. Stewart (1913), 48 Mont. 347, 137 P. 854; State ex rel. Thompson v. Babcock (1966), 147 Mont. 46, 409 P.2d 808; Jeppeson v. Dep't of State Lands (1983), 205 Mont. 282, 667 P.2d 428.

Nonetheless, the broad discretionary powers of DSL are not without limit and are defined by the parameters of statutory

7

requirements enacted by the legislature. See Winchell I, 764 P.2d at 1270. We hold that, because DSL refused to consider Winchell's bid pursuant to an overbroad and unlawful administrative regulation, DSL acted in excess of its jurisdiction and abused its discretion. We reiterate that, according to statutory authority, a high bid can only be rejected if DSL makes written findings that the high bid was too high for community standards, would cause damage to the land, or would impair long-term productivity.

We note that DSL may, in exercising its discretion, consider the fact that Winchell's lease was previously canceled, and the circumstances of that cancellation, as evidence supporting any of the three statutory bases for rejecting his high bid. However, the fact of the previous cancellation cannot, in and of itself, automatically prohibit the applicant from either bidding or leasing. DSL must consider Winchell's bid in the context of the statutory requirements of §§ 77-6-202 and 77-6-205(2), MCA.

## II - LEASING TO UNINCORPORATED ASSOCIATION

DSL also contends that it properly granted the lease to DCPF, which is an unincorporated association. We disagree.

As discussed above, § 77-6-108, MCA, addresses who may lease state lands:

> No person may lease state lands, except one who is the head of a family, unless he has attained the age of 18 years. Any such person and any association, company, or corporation authorized to hold lands under lease may lease state lands. . . . (emphasis added)

Section 26.3.129(19), ARM, defines "person" for purposes of state leases as "any individual, firm, association, corporation,

8

governmental agency, or other legal entity." At issue in this case is whether DCPF is an association authorized to "hold lands under lease." DCPF is an unincorporated association and its bid was signed by its president, Mark Zuber.

Winchell contends that unincorporated associations and similar entities not on record with the Secretary of State are prohibited from acquiring state land leases. DSL argues that § 77-6-108, MCA, allows organizations not on file with the Secretary of State, including "loosely-knit groups such as associations, companies, partnerships, and similar organizations" to obtain leases. The District Court found that DCPF was not a legal entity and that, under common law principles, it could not hold a leasehold interest in real property.

This is an issue of first impression in Montana. We have not found nor have we been cited to any Montana authority on the issue of whether or not an unincorporated association can hold lands under lease.

We have previously stated that a lease is a conveyance of an interest in land. See Knight v. OMI Corp. (1977), 174 Mont. 72, 568 P.2d 552. At common law, an unincorporated association is not considered a legal entity capable of acquiring or holding title to real property in the association's name. North Little Rock Hunting Club v. Toon (Ark. 1976), 536 S.W.2d 709, 713-14; Bank of Oak Grove v. Wilmot State Bank (Ark. 1983), 648 S.W.2d 802, 803; O.K.C. Corp. v. Allen (Tx. 1978), 574 S.W.2d 809, 812. The reasoning behind this common-law rule is sound: there must be some legal,

9

identifiable party holding the interest who is responsible for liability arising out of that ownership interest.

In Toon, the North Little Rock Hunting Club, an unincorporated association, leased real property in its own name. The lessor sold the property to the Toons, who filed an action attempting to void the lease agreement with the hunting club. Toon, 536 S.W.2d at 711. The lower court held that, at common law, an unincorporated association could not hold title to real property, and the Arkansas Supreme Court affirmed the holding. Toon, 536 S.W.2d at 713-14.

In O.K.C., trustees of the White Rock Chapel Church filed an action to establish title to a tract of land. O.K.C., 574 S.W.2d at 811. The Court of Civil Appeals of Texas stated that an unincorporated association cannot acquire title to real property in its own name. The court went on to state, however, that trustees of an unincorporated association can hold real property interests. O.K.C., 574 S.W.2d at 812.

Both of these cases illustrate the important policy reasons supporting the common law rule. In O.K.C., individual, identifiable trustees were able to hold real property interests. However, in both O.K.C. and Toon, the associations themselves could not hold real property interests. We agree with the reasoning behind these cases, and adopt the same in this case.

DSL argues that it can hold the person signing the lease liable for a breach of the lease agreement or for damages caused to the land. However, if that person has moved, died or cannot be located, DSL is left with a lease where the actual, nominal lessee

is an organization with no legal status, whose membership is probably unknown, and which may be operating without the benefit of any formal organization or regularly elected or appointed representatives with clearly delineated authority to bind the membership of the organization. If the lessee _is_ the individual, then DSL has clearly defined legal remedies for enforcement and breach of the lease against that individual. If, on the other hand, the actual, nominal lessee is nothing more than a "loosely-knit group" purportedly represented by an individual who may or may not have authority to bind the individual members of that group, then DSL's ability to enforce its lease is, at best, questionable. Entering into leases whose enforceability is questionable flies directly in the face of DSL's fiduciary duty to "secure the best lessees possible, so that the state may receive the maximum return possible with the least injury occurring to the land." Section 77-6-205(2), MCA.

Montana has statutorily recognized two types of associations as legal entities. These associations include cooperative associations and agricultural associations, as provided for in Title 35, Chapters 15 and 16, MCA. Both of these entities have the statutory authorization to hold real property interests. Section 35-15-103, MCA; Section 35-16-202, MCA. There is no provision in the Montana statutes that allows unincorporated associations, without a legal identity, to hold real property interests. Therefore, we hold that DCPF, an unincorporated association and, thus, a non-legal entity, cannot lease state lands in its own name.

11

DSL's own regulation supports this conclusion: 26.3.129(19), ARM, allows DSL to lease to "persons", which is defined to include various types of organizations "and other legal entities." This definition necessarily implies all the organizations listed in the definition, including individuals, firms, associations, corporations, and governmental agencies, must have a legal existence in one form or another. The District Court correctly interpreted the law on this issue.

Finally, DSL contends that, even if DCPF cannot hold a state land lease, Pheasants Forever, Inc., can hold such a lease. DCPF is a local chapter of and is sponsored by Pheasants Forever, Inc., which is registered and authorized to do business in Montana as a corporation. We note, however, that Pheasants Forever, Inc. was not the bidder on the state lease; DCPF was. Therefore, whether Pheasants Forever, Inc. can hold the lease is irrelevant.

Affirmed in part and reversed in part.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

12

Justice Terry N. Trieweiler dissenting.

I dissent from the majority's holding under both Issue I and Issue II.

I agree that Winchell was not entitled to an evidentiary hearing and that the District Court erred by requiring one.

However, I strongly disagree with the majority's conclusion that 26.3.142(6), ARM, is in derogation of State statutes, and therefore, unlawful.

Section 77-6-205(2), MCA, provides that "[i]t is the duty of the board to secure the best lessees possible, so that the state may receive the maximum return possible with the least injury occurring to the land." The same statute also provides that a "bid is not in the best interest of the state . . . [if it] would cause damage to the tract . . . ." It is not inconsistent with that statute for the Department of State Lands to conclude that prior conduct which was sufficiently detrimental to the land to cause cancellation of the lessor's lease should disqualify the same lessor from bidding on the same lease in the future. Therefore, I conclude that 26.3.142(6), ARM, is a reasonable regulation adopted in furtherance of the criteria set forth in § 77-6-205(2), MCA.

I concur with that part of Justice Hunt's dissenting opinion in which he dissents from the majority's decision under Issue II. However, I also dissent for the reason that the majority's decision is contrary to the plain language of § 77-6-108, MCA, which clearly provides that "any association . . . authorized to hold lands under lease may lease state lands . . . ." There is no statutory rule

13

which would prohibit this association from holding lands. Neither is there any prior case law in Montana which would prohibit it from doing so. All of the public policy reasons set forth by the majority for prohibiting unincorporated associations from holding title to real property would apply equally to incorporated associations. The only difference between the two types of entity is a piece of paper filed with the Secretary of State. Therefore, I conclude that the distinction between incorporated and unincorporated associations makes no practical difference.

For these reasons, I join in Justice Hunt's dissent from Issue II, and also dissent from the majority's decision under Issue I. I would reverse the judgment of the District Court and uphold the lease between the Department of State Lands and Dawson County Pheasants Forever.

_____
Justice

14

Justice William E. Hunt, Sr., dissenting.

I concur with Justice Trieweiler's dissent on Issue I. I also dissent on Issue II. When Mark W. Zuber signed the lease with the State of Montana for "Dawson County Pheasants Forever" as president, he became individually liable on the lease to the State of Montana if he represented an entity that for any reason could not hold an interest in real estate. He could not escape that liability any more than he could escape the liability if he had not signed as president of the organization but signed as an individual. I see nothing in the statutes or the common law that would change that result. He furnished the necessary documents with his bid that included his address and telephone number, and there is nothing in the record to show that it would be any more difficult to trace him to answer for any breach of the lease to the State. I would reverse on this ground alone.

But I would like to add, in addition, that Mr. Zuber was not served in the proceedings, according to the record, despite the fact that his address and telephone number were immediately available. Apparently no attempt was made to find out from him, or any other official of the organization he represented, the necessary proof of the right to hold property. Counsel for the unsuccessful bidder wrote a letter to the Montana Secretary of State asking for information about the status of the Dawson County organization and was advised that there was no record of that entity on file, and of course, there is not. But the record does disclose that upon the Department of State Lands' appeal for

15

reconsideration of the findings of fact, conclusions of law, and judgment of the District Court, a document was produced, duly filed with the Secretary of State, of a Minnesota corporation of Pheasants Forever, Inc., and accompanying that document was an affidavit by the secretary/ treasurer of the Dawson County Pheasants Forever stating that such an organization did exist and was a duly authorized chapter of the registered "Pheasants Forever, Inc." The District Court denied the motion to reconsider.

The local chapter was not incorporated, and therefore, its title would not appear in the Secretary of State's office. With a shortage of personnel and 10,000 leases through the State of Montana, the Department of State Lands is not in the position to determine the legal status of each of its lessees to determine if they can hold an interest in property. Until the majority opinion, it did not have to.

I would reverse on the grounds that the individual who signed the lease was a proper individual to hold a leasehold interest. At the very least, I would remand for a hearing to consider all of the evidence presently in the file in order to determine if the Dawson County Pheasants Forever organization is capable of holding a lease.

_____
Justice