No. 98-417

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 11

THOMAS WINCHELL and DAVID WINCHELL,

Petitioners and Appellants,

v.

MONTANA DEPARTMENT OF NATURAL RESOURCES

AND CONSERVATION, and JIM HAGEMEISTER,

Respondents and Respondents.

APPEAL FROM: District Court of the Seventh Judicial District,

In and for the County of Dawson,

No

The Honorable Richard G. Phillips, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Steven S. McPherson; Schneider & Howe, P.C.; Glendive, Montana

For Respondents:

Tommy H. Butler, Special Assistant Attorney General, Montana

Department of Natural Resources and Conservation; Helena, Montana

A. Lance Tonn, Lucas & Tonn, P.C.; Miles City, Montana

(for respondent Hagemeister)

Submitted on Briefs: November 24, 1998

Decided: January 25, 1999

Filed:

No

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

**¶1. Appellants, Tom and David Winchell, sought judicial review of the Department of Natural Resources and Conservation's valuation of improvements upon their lease on state land. The Winchells allege that the Department exceeded its statutory authority under § 77-6-306(3), MCA, when it substituted its values for the values established by a panel of arbitrators. Both the Winchells and the Department moved for summary judgement in the Seventh Judicial District Court, Dawson County. On May 8, 1998, the District Court granted summary judgment in favor of the Department and the Winchells appeal. We affirm.**

**¶2. The issue before us is whether the District Court erred when it concluded that the Department of Natural Resources and Conservation did not exceed its statutory authority under § 77-6-306(3), MCA, by establishing its own values of improvements on state land.**

## FACTUAL BACKGROUND

**¶3. At issue in this case is State Lease No. 0343, a 477.9 acre tract of state trust land located in Dawson County. The lease has been the subject of long-standing litigation which has culminated in a series of cases before the Montana Supreme Court.**

**¶4. Litigation commenced when the Department of State Lands (now known as the Department of Natural Resources and Conservation) canceled the Winchells' lease because the Winchells failed to pay agricultural rents on thirty-two acres where they made agricultural improvements. Through the District Court, the Winchells obtained a writ of prohibition to avoid paying the agricultural rents. We upheld the writ in *Winchell v. Department of State Lands* (1988), 235 Mont. 10, 764 P.2d 1267 (*Winchell I*), on the basis that the thirty-two acres were not suited for agricultural use, despite the Winchells' improvements. Thus, lower grazing rents were due instead.**

**¶5. The Winchells, thereafter, used the land for grazing. Then, in *Winchell v.***

*Department of State Lands* (1990), 241 Mont. 94, 785 P.2d 212 (*Winchell II*), we affirmed the Department's second attempt to cancel the Winchells' lease. This time the Department successfully argued that the Winchells mismanaged the lease by permitting the land to be overgrazed.

¶6. In *Winchell v. Department of State Lands* (1993), 262 Mont. 328, 865 P.2d 249 (*Winchell III*), we considered the Winchells' efforts to regain the lease by submitting the highest bid in a competitive bid process for a new lease. We concluded that the Department could reject the Winchells' bid if it provided written findings as to why acceptance of the bid was not in the State's best interest.

¶7. When the Department solicited bids a second time for a new lease, the Winchells again submitted the highest bid. This time, the Department awarded the lease to the second highest bidder, Jim Hagemeister. In order for Hagemeister to obtain the lease, however, he had to pay the Winchells the value of the useable improvements they placed on the land, pursuant to § 77-6-305, MCA. Since the Winchells and Hagemeister were not able to agree on a value of the improvements, a three-person panel of arbitrators was requested to ascertain a value, pursuant to § 77-6-306(1), MCA. Two of the three arbitrators agreed that the improvements should be valued in excess of $20,000; however, they did not explain their rationale. The third arbitrator submitted a much lower value of $1,407.35.

¶8. Hagemeister appealed the arbitrators' higher value to the Department. Pursuant to § 77-6-306(3), MCA, the Department "examine[d] the records pertaining to the costs of the improvements" in ascertaining a new value. In addition, the Department sent its own staff appraiser to conduct an on-site inspection of the improvements. The Department set aside the arbitrators' higher value and established a much lower value of $1,564.

¶9. The Winchells appealed the Department's valuation process in the Seventh Judicial District Court, Dawson County, pursuant to § 77-6-306(4), MCA. Both parties moved for summary judgment, and on May 8, 1998, the District Court granted summary judgment in favor of the Department. From this, the Winchells appeal.

## STANDARD OF REVIEW

¶10. On appeal from a summary judgment, this Court reviews a case *de novo* based on the same criteria applied by the district court. *See Stutzman v. Safeco Ins. Co.* (1997), 284 Mont. 372, 376, 945 P.2d 32, 34 (citing *Treichel v. State Farm Mut. Auto. Ins. Co.* (1997), 280 Mont. 443, 446, 930 P.2d 661, 663). Thus,

[t]he movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove by more than mere denial and speculation that a genuine issue does exist. Having determined that genuine issues of material fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. [This Court] reviews the legal determination made by a district court as to whether the court erred.

*Stutzman*, 284 Mont. at 376, 945 P.2d at 34 (quoting *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264-65, 900 P.2d 901, 903).

¶11. Upon a *de novo* review of a proceeding in a case that is not "contested," our standard of review is limited to whether the agency erred in law or whether its decision is wholly unsupported by the evidence or clearly arbitrary or capricious. *See Johansen v. Department of Natural Resources & Conservation*, 1998 MT 51, ¶26, 955 P.2d 653, ¶26, 55 St. Rep. 211, ¶26 (citing *North Fork Preservation Assoc. v. Department of State Lands* (1989), 238 Mont. 451, 457, 778 P.2d 862, 866). In such a proceeding, we only inquire insofar as to ascertain if the agency has stayed within its statutory bounds and has not acted arbitrarily, capriciously, or unlawfully. *See Johansen*, ¶26 (citing *North Fork Preservation*, 238 Mont. at 457, 778 P.2d at 866. We afford great deference to agency decisions, especially where it implicates substantial agency expertise. *See Johansen*, ¶29.

¶12. This standard of review is different than the standard we apply in a contested case under the Montana Administrative Procedures Act, §§ 2-4-701 to -711, MCA. Although the District Court applied the standard of review for a contested case, we will affirm its decision regardless of its reasoning where it reached the correct result. *See Farmers Union Cent. Exchange, Inc. v. Department of Revenue* (1995), 272 Mont. 471, 475, 901 P.2d 561, 563 (citing *Lindey's, Inc. v. Goodover* (1994), 264 Mont. 449, 453, 872 P.2d 764, 766; *Tisher v. Norwest Capital Mgmt. & Trust* (1993), 260 Mont. 143, 153-54, 859 P.2d 984, 990).

## DISCUSSION

**¶13. Did the District Court err when it concluded that the Department of Natural Resources and Conservation did not exceed its statutory authority under § 77-6-306 (3), MCA, by establishing its own values of improvements on state land?**

**¶14. We begin our analysis by considering the statutory language that requires improvements to be valued at their reasonable value. Section 77-6-302(1), MCA, requires a new lessee of state land to pay the former lessee a "reasonable value" for improvements made by the former lessee. A reasonable value of improvements must be established at the time the new lessee takes possession of the land. In 1993, the Legislature amended this statute to require that a reasonable value not be "less than the full market value of the improvements." The 1993 amendments also require that records pertaining to the cost of the improvements be used to establish a reasonable value. *See* §§ 77-6-302(2) and -306(3), MCA.**

**¶15. When the Winchells and Hagemeister did not agree on a reasonable value for the improvements on the land, pursuant to § 77-6-302, MCA, a panel of arbitrators was asked to ascertain a value pursuant to § 77-6-306(1), MCA. The arbitrators requested the Department to instruct them on what to consider in their valuation process. The Department referred them to § 77-6-303, MCA, which states:**

In determining the value of these improvements, consideration shall be given to their original cost, their present condition, their suitableness for the uses ordinarily made of the lands on which they are located, and to the general state of cultivation of the land, its productive capacity as affected by former use, and its condition with reference to the infestation of noxious weeds. Consideration shall be given to all actual improvements and to all known effects that the use and occupancy of the land have had upon its productive capacity and desirableness for the new lessee.

The Department's response indicated that the present condition of the improvements and their suitableness for ordinary uses should reflect their full market value in their present condition and their reasonable value. Thus, the Department's instruction was consistent with the language of § 77-6-302, MCA.

**¶16. The Department's own valuation of the improvements included a staff**

appraiser's physical inspection. Pursuant to § 26.3.152(6), ARM (now known as § 36.25.125(6), ARM), the appraiser formulated his own values for the Winchells' water spreading project, cross-fencing, spring development, stock water development, and prairie dog control, and used the prevailing area rates for agricultural labor.[1]

¶17. The Winchells argue that when the appraiser performed his own physical inspection and valuation of the improvements, the Department violated its statutory authority. The Winchells contend that the Department's authority is limited by the Legislature's 1993 amendment, which allows the Department only to "examine the records pertaining to the costs of the improvements." The Winchells distinguish this language from the statute's pre-1993 language which provided the Department authority to "examine the improvements." Contrasting the original language from its amended version, the Winchells argue that the Department no longer has the authority to perform a *de novo* review of the value of the improvements. The Winchells contend that the Department must give deference to the arbitrators' factual conclusions and review only the records pertaining to the costs of the improvements. Thus, they ask us to reverse the District Court's decision granting summary judgment on this issue.

¶18. The Department interprets the statutes differently. The Department first refers to the language of § 77-6-306(3), MCA, which states that the Department's decision "is final"--a term that characterizes its decision as independent of the arbitrators' decision. The Department also points out the absence of any language that characterizes its review as an appellate review. The Department argues that an appellate review is mandated only upon the District Court under § 77-6-306(4), MCA. Next, the Department argues that the language of § 77-6-303, MCA, which requires that the value of the improvements reflect their present condition and suitableness for ordinary uses of the land, makes the appraiser's physical inspection and independent valuation essential.

¶19. The District Court relied on the language of § 77-6-303, MCA, as well, and determined that if the Department limited its review to only the records, all the other factors intended to be considered by the Legislature in the valuation of improvements would be ignored. Thus, by limiting the Department to a review of the records, the court would violate the rule of statutory construction that requires courts to read all parts of a statute as a whole and to give effect to every part. In

addition, the District Court found no statutory language prohibiting the Department from considering the factors listed in § 77-6-303, MCA. Looking at § 77-6-306(4), MCA, which refers to a district court's judicial review of improvement values "fixed by the [D]epartment," the District Court concluded that if the Department was merely to review the procedures used by the arbitrators and the records pertaining to the costs of the improvements, the Department would be in no position to "fix" values.

¶20. We agree with the District Court that it is significant that we read all provisions of the statute and give effect to all of them. *See Albright v. State* (1997), 281 Mont. 196, 206, 933 P.2d 815, 821 (citing *Larson v. Crissmore* (1987), 228 Mont. 9, 15, 741 P.2d 401, 405). Thus, despite the Legislature's mandate that the Department review the records pertaining to the improvements, the Department cannot ignore the requirements of § 77-6-303, MCA. While the Legislature's amendatory language requires the Department to consider the records, it does not prohibit the Department from considering other factors referenced in § 77-6-303, MCA, as well. In our determination, a reasonable value must incorporate all factors that will reflect the value of improvements at their current market rate, including any appreciation or depreciation. Thus, our interpretation of the relevant statutes affords the Department a *de novo* review of the arbitrators' decision and the opportunity to establish its own values of improvements made on state land.

¶21. In a previous decision, *Evertz v. State* (1991), 249 Mont. 193, 815 P.2d 135, we recognized the Department's authority to value improvements on state land, pursuant to § 77-6-306(3), MCA. The Department asks us to advance our holding in *Evertz*; however, *Evertz* does not support our decision here. In *Evertz*, we considered the Department's valuation procedure in light of a due process analysis before the 1993 amendments were made. At that time, the Department's authority to perform a *de novo* review was not at issue.

¶22. Based on our determination that the Department has the authority to conduct a *de novo* review of the value for improvements on state land, we also are not compelled to advance the Winchells' argument that the Uniform Arbitration Act, found at Title 27 of the Montana Code Annotated, should limit the Department's authority. We hold that because the Uniform Arbitration Act establishes a district court's standard of review in an appellate procedure, the Act does not apply here.

¶23. The Winchells do not contest the Department's findings, so we will not consider them any further. Thus, we conclude that the District Court did not err when it decided that the Department of Natural Resources and Conservation did not exceed its statutory authority under § 77-6-306(3), MCA, by establishing its own values of improvements on state land. The Department has stayed within its statutory bounds and has not acted arbitrarily, capriciously, or unlawfully.

¶24. We affirm.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER

Justice James C. Nelson specially concurs.

¶25. I concur in our opinion, although somewhat reluctantly. By the plain language of the amendments which it adopted, the 1993 Legislature appears to have restricted the scope of the Department's involvement in valuation proceedings under § 77-6-306 (3), MCA. Prior to the 1993 amendments, the Department was required to "examine the improvements," thus contemplating a physical or on-site inspection. From 1993 to the present, however, the Department is required to "examine the *records pertaining to the costs of the* improvements." (Emphasis added.) In construing a statute, this Court presumes that the legislature intended to make some change in

existing law by passing it. *State ex rel. Dick Irvin, Inc. v. Anderson* (1974), 164 Mont. 513, 523-24, 525 P.2d 564, 570. Arguably, the 1993 Legislature intended some change in the Department's review authority under § 77-6-306(3), MCA, and it appears, facially, that the contemplated change was to restrict the Department's authority to examine the improvements on-site. Unfortunately, given the lack of any definitive legislative history explaining the amendment and taking into consideration the rest of the statutory scheme, this sort of interpretation does not make a whole lot of sense. Thus, what might be an otherwise clear statement of legislative intent in amending the statute becomes confusing and ambiguous.

¶26. I concur in our opinion, because it is about the only interpretation that preserves the entirety of the statutory scheme for valuing improvements. If the legislature had something else in mind, then it will have to make that clear in another statutory amendment.

/S/ JAMES C. NELSON

1. [1]The Winchells do not contest the validity of § 36.25.125(6), ARM, which states:

Summer fallowing, necessary cultivation done after the last crop grown, seeding and growing crops shall be considered improvements. The value of seeded acreage and growing crops shall be limited to costs for seeding, seedbed preparation, fertilization and agricultural labor at the prevailing rate in the area. The former lessee's or licensee's anticipated profit shall not be included in such value. . . . The original breaking of the ground shall also be considered an improvement; however, if 1 year's crops have been raised on the land, the value shall not exceed $2.50 per acre and if 2 year's [sic] crops have been raised, there shall be no compensation.