FILED

11/29/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0081

DA 22-0081

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 236

JAMES C. WANGERIN, CPA,

      Petitioner and Appellant,

   v.

STATE OF MONTANA, DEPARTMENT OF REVENUE,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Third Judicial District,
                In and For the County of Powell, Cause No. DV-21-53
                Honorable Ray J. Dayton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          James C. Wangerin, Self-represented, Deer Lodge, Montana

      For Appellee:

          David Burleigh, Senior Tax Counsel, Montana Department of Revenue,
         Helena, Montana

Submitted on Briefs:  June 29, 2022

Decided:  November 29, 2022

Filed:

_____
                    Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1      James C. Wangerin (Wangerin) appeals pro se the February 2022 judgment of the Montana Third Judicial District Court, Powell County, affirming on judicial review the July 2021 Montana Department of Revenue (MDOR) denial of his petition to adopt a proposed administrative rule construing § 15-30-2605(3), MCA (three-year deadline for MDOR revision of erroneous income tax return).  We address the following restated issue:

> *Whether the District Court erroneously affirmed the MDOR decision denying Wangerin's petition to adopt a proposed administrative rule construing § 15-30-2605(3), MCA?*

We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2      Wangerin is a certified public accountant who provides professional income tax return assistance services in Deer Lodge, Montana.  In 2020, MDOR audited several 2017 state income tax returns made by Wangerin clients.  Based on those audits, MDOR subsequently issued "Audit Adjustment Letters" to the subject taxpayers pursuant to §§ 15-30-2605(1), (3), and -2642(1), MCA (authorization for and notice of MDOR revision of materially incorrect income tax returns and determination of additional tax due).  All of the adjustments included the following introductory language, *inter alia*:

> We have completed our audit of your 2017 Montana individual income tax return(s).  As a result of our audit, we've made the adjustments shown on the enclosed Statement of Adjusted Income Tax Liability, Form 18.  It explains in detail the adjustments we made including tax, penalty and interest as allowed by Montana law.

2

Each adjustment letter thus notified the subject taxpayer of: (1) the MDOR-asserted errors or deficiencies in the taxpayer's individual income tax return; (2) the MDOR-asserted revised tax debt for each taxpayer; and (3) the taxpayer's right to timely file a written objection and request for informal MDOR review. The adjustment letters referenced a specific MDOR application form for informal review which in turn referenced the right to formally dispute any adverse informal review result before the MDOR Office of Dispute Resolution (ODR).[1]

¶3 The referenced taxpayer right to seek informal MDOR review and then, if still aggrieved, a more formal review before the MDOR ODR, stems from § 15-1-211, MCA, which requires MDOR to provide by administrative rule a two-tiered "uniform dispute review procedure" for taxpayer-requested review of state tax determinations made by MDOR. The first available administrative remedy is an informal review of the subject tax determination with the MDOR official responsible for a noticed MDOR dispute with the taxpayer. Section 15-1-211(3), MCA. If the dispute remains unresolved, either party may transfer the dispute to ODR for more formal review and "a *final* department decision" from ODR within 180 days. *See* § 15-1-211(1)(a), (2)(b), (d)-(e), and (3), MCA (emphasis added). If the taxpayer elects to "bypass" further review upon transfer of the dispute to

---

[1] See § 15-1-211, MCA (required establishment of MDOR "uniform dispute review procedure" by administrative rule for dispute resolution with responsible MDOR officer or ODR). See also, e.g., Admin R. M. 42.2.510, 42.2.512, and 42.2.613 through 42.2.621 (2016-2022), and MDOR Forms APLS101F and APLS102F (available at https://mtrevenue.gov/publications/request-for-informal-review-form-apls101f/ and https://mtrevenue.gov/publications/notice-of-referral-to-the-office-of-dispute-resolution-form-apls102f/).

ODR, then ODR must issue a "*final* department decision" on the dispute within 30 days of receipt of the election. *See* § 15-1-211(2)(b)-(c), MCA (emphasis added).[2]  Upon timely ODR issuance of a final department decision, or ODR failure to timely issue a final department decision, the taxpayer may then timely appeal to the Montana tax appeal board (MTAB) for further administrative review as a "contested case" proceeding under the Montana Administrative Procedure Act (MAPA).  *See* §§ 15-1-222(9), -211(2)(e), 15-2-201(1)(d), -302(1)(a)-(b), and (5), MCA (taxpayer right to MTAB or court review, "or both," of "any final decision of" MDOR "assessing an additional tax," and any "appeal of a final decision" of MDOR involving any tax other than property tax imposed under Title 15 "must be made" to MTAB).  The resulting "final decision" of MTAB upon contested case appeal of a final MDOR ODR decision under § 15-1-211, MCA, is then subject to judicial review upon taxpayer petition.  *See* §§ 15-2-302(5), (6), and -303(1), MCA (required conduct of MTAB appeals "in accordance with [MAPA] contested case provisions" and provision for judicial review of MTAB "final decision").

¶4      At issue here, *inter alia*, in the § 15-1-211, MCA, internal MDOR reviews initiated by Wangerin clients regarding the January 2021 MDOR adjustment notices regarding their 2017 income tax returns was Wangerin's assertion that the noticed MDOR adjustments were untimely beyond the three-year deadline specified by § 15-30-2605(3), MCA ("the

---

[2] For MDOR's implementation of § 15-1-211(1)(a) and (2)(b)-(e), MCA, see Admin R. M. 42.2.510, 42.2.512, and 42.2.613 through 42.2.621 (2016-2022 ).  The validity of the MDOR rules implementing § 15-1-211(1)(a) and (2)(b)-(e), MCA, are not at issue here.

amount of *tax due* under any return may be *determined by*" MDOR on corrective revision under § 15-30-2605(1) "within 3 years after the return was filed"—emphasis added). Wangerin asserted that the three-year deadline specified by § 15-30-2605(3), MCA, applied not only to the date of any initial audit adjustment notice issued by MDOR pursuant to §§ 15-30-2605(1), (3), and -2642(1), MCA, but also to exhaustion of any taxpayer-initiated internal MDOR review(s) under § 15-1-211, MCA. In other words, Wangerin asserted that § 15-30-2605(3), MCA, time-barred MDOR from assessing any additional income tax due on audit under § 15-30-2605(1) and (3), MCA, unless any resulting taxpayer-initiated review of the underlying MDOR adjustment notice under § 15-1-211, MCA, is fully exhausted within three years of the filing date of the subject taxpayer return. MDOR contrarily asserted that the three-year deadline specified by § 15-30-2605(3), MCA, applies only to the date of the initial audit adjustment notice issued by MDOR under §§ 15-30-2605(1), (3), and -2642, MCA, if any.

¶5    With his clients' disputes of the 2021 MDOR audit adjustment notices still pending internal MDOR review under § 15-1-211, MCA, Wangerin separately petitioned MDOR by email pursuant to § 2-4-315, MCA (MAPA provision for petition for adoption, amendment, or repeal of administrative rules),[3] to "Adopt a Rule to Clarify MCA 15-30-2605" based on his contrary interpretation of § 15-30-2605(3), MCA. The petition asserted that MDOR's interpretation of § 15-30-2605(3), MCA, was "invalid" and

---

[3] See also corresponding Admin. R. M. 1.3.308 (2008).

erroneously allowed it to routinely conduct "late audits" just prior to expiration of the three-year deadline specified by § 15-30-2605(3), MCA, often coinciding with the April 15th income tax return filing deadline for subsequent tax years, and thereby burdening his busy tax preparation season. The petition asserted that the Legislature intended § 15-30-2605(1) and (3), MCA, to parallel the individual tax return audit procedure utilized by the Internal Revenue Service (IRS) regarding federal income tax returns "so that there is time to exhaust [the MDOR] administrative appeal" process under § 15-1-211, MCA, prior to ripeness for MTAB appeal. The petition thus proposed that MDOR adopt an interpretive administrative rule providing:

> The date for stopping the [§ 15-30-2605(3)] statute of limitations . . . is the date of decision with respect to which all rights of appeal have been waived or exhausted.[4]

While Wangerin's rule petition under § 2-4-315, MCA was pending, MDOR and the subject Wangerin clients settled the 2017 tax liability disputes parallel-pending under the internal MDOR review process provided by § 15-1-211, MCA.[5]

¶6 Thereafter, MDOR issued a written denial of Wangerin's § 2-4-315, MCA, rule petition in July 2021 on the stated grounds, *inter alia*, that: (1) the proposed rule was "unsupported by the record and laws of Montana"; (2) § 15-30-2605 "expressly states that

---

[4] The record indicates that Wangerin simultaneously proposed a similar amendment of § 15-30-2605, MCA, to several Montana legislators but no legislator introduced such proposal for consideration in the 2021 Legislative Session.

[5] Those settlements included a caveat, however, that MDOR would reopen those § 15-1-211, MCA, disputes in the event of a subsequent judicial interpretation of § 15-30-2605(3), MCA, that would render the 2017 audit adjustments untimely.

6

[MDOR] can determine the amount of tax due for up to three years"; (3) § 15-30-2605(1) and (3), MCA, clearly and unambiguously requires only that MDOR "complete its audit within the three-year deadline" and thus contemplates that the ultimate resolution of any administrative appeals under § 15-1-211, MCA, may not occur until after expiration of the three-year deadline specified by § 15-30-2605(3), MCA; and (4) Wangerin's proposed rule would thus "engraft a requirement that [MDOR] follow federal audit guidelines," thereby exceeding the scope of MDOR's "rule-making authority" inconsistent with the express language of § 15-30-2605(1) and (3), MCA.

¶7　By pro se petition filed July 2021, Wangerin petitioned for judicial review of the MDOR rulemaking denial without reference to any asserted MAPA or other statutory predicate for judicial review.  In substance, Wangerin's petition asserted that MDOR's construction of § 15-30-2605(3), MCA, was erroneous as earlier asserted.  The petition thus prayed for "revers[al]" of the MDOR denial of his petition to adopt a proposed administrative rule "clarify[ing]" § 15-30-2605, MCA.  MDOR opposed the petition on various asserted grounds consistent with its prior petition denial.

¶8　In February 2022, on briefing and oral argument, the District Court affirmed the MDOR denial of Wangerin's rule petition.  Applying § 2-4-704, MCA, the court determined, *inter alia*, that MDOR's construction of § 15-30-2605(3), MCA, was correct and that Wangerin failed to demonstrate that its denial of his rulemaking petition was arbitrary, capricious, or based on an erroneous conclusion or application of law.  Wangerin timely appeals.

**STANDARD OF REVIEW**

¶9      In contrast to the broader standard of judicial review applicable to final "contested case" agency decisions under §§ 2-4-702 through -704, MCA, the standard of judicial review of an agency decision denying a § 2-4-315, MCA, petition for agency adoption, repeal, or revision of an administrative rule is whether the decision was arbitrary, capricious, or otherwise unlawful.  *See Core-Mark Int'l, Inc. v. Mont. Bd. of Livestock*, 2014 MT 197, ¶¶ 1, 25, 28, 30, 32, and 34, 376 Mont. 25, 329 P.3d 1278.[6]  An agency decision not involving a "contested case" is arbitrary or capricious only if:  (1) any factual considerations or findings specified by law as criteria for decision are not supported by substantial evidence; (2) the decision is based on an erroneous conclusion or application of law or reaches an illegal or unconstitutional result; or (3) the decision is manifestly lacking in conscientious reasoning regarding the pertinent legal criteria consistent with the ultimate decision.  *See Core-Mark*, ¶¶ 37-38 and 42 (internal citation omitted); *Winchell v. Mont. Dep't of Nat. Res. & Conservation*, 1999 MT 11, ¶¶ 11-12, 293 Mont. 89, 972 P.2d 1132 (standard of review of agency decision not involving a "contested case" is whether the decision was based on an erroneous application or conclusion of law, in excess of the agency's "statutory bounds," "wholly unsupported" by the pertinent evidence, or "clearly arbitrary or capricious").  *Accord Langen v. Badlands Co-op. State Grazing Dist.*, 125

---

[6] *Compare Bitterroot River Protective Ass'n v. Bitterroot Conservation Dist.*, 2008 MT 377, ¶ 18, 346 Mont. 507, 198 P.3d 219 (standard of judicial review of agency declaratory rulings under § 2-4-501, MCA (agency declaratory rulings "as to the applicability of any statutory provision or . . . rule"), is the same as for review of MAPA "contested cases," i.e., § 2-4-704, MCA)).

Mont. 302, 308-09, 234 P.2d 467, 470-71 (1951).[7] The elements of the standard of judicial review of an agency decision not involving a MAPA contested case present questions of law which we review de novo on appeal from a district court decision based on the same standard of review. *See Core-Mark*, ¶¶ 23-42; *Winchell*, ¶¶ 11-12; *Langen*, 125 Mont. at 308-09, 234 P.2d at 470-71. *See also Blaine Cty. v. Stricker*, 2017 MT 80, ¶ 16, 387 Mont. 202, 394 P.3d 159 (applying same standard of appellate review as district court on judicial review of final contested case decision under § 2-4-704, MCA).

## DISCUSSION

¶10 *Whether the District Court erroneously affirmed the MDOR decision denying Wangerin's petition to adopt a proposed administrative rule construing § 15-30-2605(3), MCA?*

¶11 MDOR is an administrative agency, as defined by § 2-4-102(2), MCA, charged, *inter alia*, with "general supervision over the administration of the assessment and tax laws of [this] state." Sections 2-15-1301, 15-1-101(g), and -201(1)(a), MCA. As pertinent here, MDOR thus has discretionary rulemaking authority to promulgate administrative rules "to supervise the administration of all revenue laws of the state and assist in their enforcement"

---

[7] *See also Mont. Envtl. Info. Ctr. v. Mont. Dep't of Envtl. Quality*, 2016 MT 9, ¶ 36, 382 Mont. 102, 365 P.3d 454 (holding that agency approval of hard rock mining permit not arbitrary or capricious, i.e., a "clear error of judgment," where based on lawful result and "consideration of the relevant [statutory] factors" of decision supported by substantial evidence); *Clark Fork Coal. v. Mont. Dep't of Envtl. Quality*, 2012 MT 240, ¶ 29, 366 Mont. 427, 288 P.3d 183 (holding that agency approval of a Water Quality Act storm water discharge permit was a "clear error of judgment," i.e., arbitrary and capricious, based on failure to consider the "relevant factors set forth" by law as criteria for decision); *N. Fork Pres. Ass'n v. Mont. Dep't of State Lands*, 238 Mont. 451, 456-67, 778 P.2d 862, 865-72 (1989) (applying arbitrary or capricious, unlawful, or statutory criteria of decision unsupported by substantial evidence standard of review of non-contested-case agency decisions).

9

and to "adopt rules . . . as it considers necessary to enforce the provisions of" Title 15, chapter 30, MCA (individual income tax determination, collection, and administration). Sections 15-1-201(1)(a) and 15-30-2620(1), MCA.

¶12 An agency "rule" is any "agency regulation, standard, or statement of general applicability" that, *inter alia*, "implements, interprets, or prescribes law or policy," and includes "the amendment or repeal of a prior rule." Section 2-4-102(11), MCA. *See also* §§ 2-4-102(14), -305, and -308, MCA. Except as more specifically provided by statute, agencies may exercise granted rulemaking authority only in accordance with the applicable provisions of Title 2, chapter 4, part 3, MCA (MAPA-specified agency rulemaking procedure and requirements), and within a specific grant of rulemaking duty or authority otherwise provided by statute. *State v. Vainio*, 2001 MT 220, ¶¶ 35-36, 306 Mont. 439, 35 P.3d 948 (by operation of broad MAPA definition of a "rule," MAPA "rule making procedures" and limitations govern administrative rulemaking whenever and however authorized by statute "regardless of whether the authorizing statute expressly refers to MAPA"); *Bell v. Mont. Dep't of Prof. & Occup. Licensing*, 182 Mont. 21, 22-23, 594 P.2d 331, 332-33 (1979) (administrative law agencies and commissions may exercise rulemaking authority only "within the grant of legislative power" provided by "enabling statutes" and may not "engraft additional and contradictory requirements on the statute[s]" to which the enabling statutes pertain—citations omitted). *See also* § 2-4-301, MCA (MAPA confers no rule making or enforcement authority on agencies except for adoption of general organizational and procedural rules); *Anaconda Co. v. Mont. Dep't of Revenue*,

10

178 Mont. 254, 257, 583 P.2d 421, 422-23 (1978) (agencies have no power or authority other than as "specifically conferred upon them by [statute]").

¶13    MAPA provides for exercise of agency rulemaking authority in two related but distinct ways.  First, agencies may unilaterally initiate formal rulemaking regarding an *agency-proposed* rule in accordance with the applicable procedure and requirements specified by §§ 2-4-302 through -314, MCA (public notice, hearing, comment, agency consideration of necessity, decision on adoption of proposed rule, and publication and periodic agency review of adopted rule).  Second, an "interested person[8] . . . may petition an agency requesting the promulgation, amendment, or repeal" of a "rule."  Section 2-4-315, MCA.[9]  In contrast to the MAPA rulemaking process for an agency-proposed rule, however, a *petition-proposed* rule must first obtain discretionary preliminary agency approval of the proposed rule, to wit:

> Within 60 days after submission of a [rules] petition, the agency *either* shall *deny* the petition in writing *or* shall *initiate rulemaking* proceedings in accordance with 2-4-302 through 2-4-305.  A decision to deny a petition or to initiate rulemaking proceedings must be in writing . . . [and] [t]he written decision must include the reasons for the decision.

Section 2-4-315, MCA (emphasis added).

---

[8] See § 2-4-102(5)(a), MCA (definition of an "interested person").

[9] MAPA requires "[e]ach agency [to] determine and prescribe by rule the form for [rules] petitions and the procedure for their submission, consideration, and disposition."  Section 2-4-315, MCA. *See also* Admin. R. M. 1.3.308 (2008) and 42.2.101 (1979) (implementing § 2-4-315 procedural requirement for MDOR rules petitions in accordance with § 2-4-202, MCA).

11

¶14 The preliminary agency decision under § 2-4-315 must state "the reasons for the decision" and, as applicable to the nature of the proposed rule at issue and any statutorily-specified factual criteria for decision, be "based on [any] record evidence . . . submitted" in support of or response to the petition. Section 2-4-315, MCA. In that regard, an "agency may, but is not required to, conduct a hearing or oral presentation on the petition in order to develop a record and record evidence and to allow the petitioner and interested persons to present their views." Section 2-4-315, MCA. In other words, the preliminary agency decision on a rules petition under § 2-4-315, MCA, must be based on all "relevant factors specifically related to" the regulation at issue and any required statutory criteria, but agencies have "wide discretion" in determining "whether to conduct a hearing," and if so, whether a formal or informal hearing, "on a petition for adopting, repealing, or amending a rule." *Core-Mark*, ¶¶ 28, 34, and 37 (internal punctuation and citation omitted).[10] However, agency consideration and decision under § 2-4-315, MCA, on whether to preliminarily approve a petition-proposed rule action for initiation of formal rulemaking under §§ 2-4-302 through -305, MCA, is neither a "contested case" proceeding as defined and referenced in §§ 2-4-102(4), -601 through -623, and -702(1), MCA, nor subject to judicial review under §§ 2-4-702 and -704, MCA (broad standard of judicial

---

[10] *See also* §§ 2-4-302(5) and -304, MCA (unless "otherwise required by statute" an agency "need not" follow MAPA "contested case procedures" in hearings held during rulemaking proceedings— agency "may use informal conferences . . . with respect to contemplated rulemaking"). *Compare* §§ 2-4-302(1), (4), and -102(12)(a), MCA (providing that, upon initiation of formal rulemaking proceeding on public notice of a "proposed action" on a rule, the agency "shall schedule an oral hearing" if the "proposed rulemaking involves matters of significant [public] interest").

review for final contested case agency decisions). *Core-Mark*, ¶¶ 23-34 (internal citations omitted).

¶15 Here, as similarly characterized by MDOR, the District Court characterized Wangerin's district court claim as a petition for judicial review under § 2-4-704, MCA.[11] We recognize that § 2-4-704, MCA, encompasses, *inter alia*, certain similar elements of the more limited arbitrary/capricious/unlawful standard applicable to judicial review of agency decisions *not* involving contested cases under MAPA. *See* §§ 2-4-102(4), -702, and -704, MCA; *compare Core-Mark*, ¶¶ 25, 28, 30, 32, 34, and 37-38. However, § 2-4-704, MCA, technically does not apply here because the preliminary MDOR rule petition denial at issue under § 2-4-315, MCA, was not a "contested case" as defined by MAPA. *See Core-Mark*, ¶¶ 23-34. *See similarly Winchell*, ¶ 12. The District Court thus erroneously applied the wrong standard of judicial review to the MDOR denial of Wangerin's rule petition under § 2-4-315, MCA. However, we will nonetheless subject the disputed MDOR decision to the correct standard of review for agency decisions not

---

[11] The District Court specifically cited § 2-4-704, MCA, as the applicable standard of review, while MDOR cites *Boyne USA, Inc. v. Mont. Dep't of Revenue*, 2021 MT 155, ¶ 12, 404 Mont. 347, 490 P.3d 1240 (conducting judicial review of the subject final contested case decision of the state tax appeal board regarding the tax status of certain resort services fees assessed on guests by Boyne d/b/a Big Sky Resort in Big Sky, Montana), as encompassing the asserted de novo standard of review of the agency conclusions of law at issue here. Wangerin cites *State ex rel. Anderson v. State Bd. of Equalization*, 133 Mont. 8, 319 P.2d 221 (1957), for the proposition that ambiguous tax statute provisions must be construed in favor of the taxpayer and narrowly focuses on the asserted correctness of his interpretation of § 15-30-2605(1) and (3), MCA, without reference or regard to the correct standard of judicial review of a preliminary agency decision on a petition-proposed administrative rule under § 2-4-315, MCA.

13

involving a "contested case" and then affirm if the court reached the correct result, even if under the wrong standard of review. *Winchell*, ¶¶ 11-12.

¶16    Under the correct standard of review applicable to non-contested-case agency decisions, the preliminary MDOR denial of Wangerin's proposed rule petition under § 2-4-315, MCA, was arbitrary, capricious, or unlawful only if:   (1) any factual considerations or findings specified by law as criteria for the decision were not supported by substantial evidence; (2) the decision was based on an erroneous conclusion or application of law or reached an illegal or unconstitutional result; or (3) the decision was manifestly lacking in conscientious reasoning regarding the pertinent legal criteria consistent with the ultimate decision. *See Core-Mark*, ¶¶ 37-38 and 42.  As a preliminary matter, Wangerin does not assert that MDOR failed to comply with the requirement of § 2-4-315, MCA, for timely issuance of a written denial and supporting rationale.[12]  The narrow question raised or implicated by Wangerin's petition involves a pure question of law as to the proper construction of §§ 15-30-2605(1), (3), and -2642(1), MCA.  As a matter of law, this question is not dependent on any cited or otherwise applicable factual criteria for preliminary agency decision under § 2-4-315, MCA, any statutory rulemaking authority separately granted to MDOR, or other pertinent substantive or administrative

---

[12] Nor does his rule petition implicate any asserted rulemaking authority under which MDOR has a clear legal duty to engage in a particular type of rulemaking without regard to a particular rule but has not. *Compare Common Cause v. Argenbright*, 276 Mont. 382, 388-92, 917 P.2d 425, 429-31 (1996) (holding that mandamus may lie under narrow circumstances in the absence of another adequate remedy in the ordinary course of law to compel an agency to comply with a clear legal duty to initiate a particular class of rulemaking without regard for any specific rule before determining whether new or additional rules are necessary).

14

statute applicable to MDOR. The question of whether substantial evidence supports the MDOR denial under the arbitrary/capricious/unlawful standard of review is thus not pertinent to the proposed rule petition at issue here.

¶17 The limited focus of statutory construction is to "ascertain and declare what is in terms or in substance contained therein," not "insert what has been omitted" or "omit what has been inserted." Section 1-2-101, MCA. To the extent possible, statutes must be construed to effect the manifest intent of the Legislature in accordance with the clear and unambiguous language of its enactments, without resort to other means of construction. *Larson v. State*, 2019 MT 28, ¶ 28, 394 Mont. 167, 434 P.3d 241 (citing *Mont. Vending, Inc. v. Coca-Cola Bottling Co.*, 2003 MT 282, ¶ 21, 318 Mont. 1, 78 P.3d 499). Except where a statute is phrased in "technical words and phrases" that "have acquired a peculiar" or special legal meaning, statutory language must be construed in accordance with the plain meaning of the subject words and phrases in ordinary usage. Section 1-2-106, MCA. The plain or technical meaning of the express language at issue must first be construed in context of the language of the subject statute as a whole and consistent with and in furtherance of the manifest purpose of the subject provision and the larger statutory scheme in which it is included. *Mt. Water Co. v. Mont. Dep't of Revenue*, 2020 MT 194, ¶ 27, 400 Mont. 484, 469 P.3d 136 (citing § 1-2-106, MCA, and *Giacomelli v. Scottsdale Ins. Co.*, 2009 MT 418, ¶ 18, 354 Mont. 15, 221 P.3d 666); *City of Bozeman v. Lehrer*, 2020 MT 55, ¶ 11, 399 Mont. 166, 459 P.3d 850 (citing *State v. Heath*, 2004 MT 126, ¶ 24, 321 Mont. 280, 90 P.3d 426, and *S.L.H. v. State Comp. Mut. Ins. Fund*, 2000 MT 362, ¶ 16,

303 Mont. 364, 15 P.3d 948); *In re Marriage of McMichael*, 2006 MT 237, ¶ 14, 333 Mont. 517, 143 P.3d 439. In construing several statutory "provisions or particulars," statutes must be construed in harmony and with effect to all to the extent possible. Section 1-2-101, MCA. Resort to extrinsic considerations beyond the plain or technical meaning of the subject statutory language in context is necessary and proper only if the express language of the statute is vague or ambiguous. *See* § 1-2-106, MCA; *Ravalli Cty v. Erickson*, 2004 MT 35, ¶ 12, 320 Mont. 31, 85 P.3d 772. *See also Mont. Fish, Wildlife & Parks v. Trap Free Mont. Pub. Lands*, 2018 MT 120, ¶ 14, 391 Mont. 328, 417 P.3d 1100 (citing *Mont. Contractors' Ass'n v. Dep't of Highways*, 220 Mont. 392, 394, 715 P.2d 1056, 1058 (1986)); *In re Estate of Garland*, 279 Mont. 269, 273-74, 928 P.2d 928, 930-31 (1996).

¶18     Here, the pertinent statutory scheme provides that "each [qualifying] individual," "married couple not filing jointly," or married couple "is liable for [an income tax] return to be filed" annually on or before the date required by § 15-30-2604, MCA, "on forms and according to rules that [MDOR] may prescribe." Section 15-30-2602(1), (2), and (4), MCA.[13] Then, if "in [its] opinion . . . , any return of a taxpayer is in any essential respect incorrect, [MDOR] may revise the return[,]" and "the amount of tax due . . . may be determined by [MDOR] within 3 years after the return was filed." Section 15-30-2605(1)

---

[13] As referenced in § 15-30-2601(1), (2), and (4), an individual income tax "return" refers to a taxpayer return of income tax imposed under Title 15, chapter 30, MCA. *See* § 15-30-2101(13), (32), and (33), MCA. *See also* § 15-30-2620(2), MCA (incorporating Internal Revenue Code definitions for "term[s] not defined in" Title 15, chapter 30, MCA); 26 U.S.C. §§ 1(a)-(d), 6011(a), (e)(1), and (3)(C); 26 C.F.R. §§ 301.6011-1 (2003), 301.6011-7(a)(2), (4) (2011), and 301.6361-1(1) (1978).

and (3), MCA.[14] Paraphrased into the active voice from its original passive voice phrasing without substantive change, and then consistently construed as a whole in accordance with the language used by the Legislature, § 15-30-2605(1) and (3), MCA, expressly provides in essence that, upon timely taxpayer filing of an income tax return in accordance with §§ 15-30-2602 and -2604, MCA, MDOR "may revise the return" and "determine" the correct "amount of tax due" if the return is "incorrect" "in any essential respect" in MDOR's "opinion," but must do so "within 3 years after" the date the taxpayer filed the return. If the MDOR revision under § 15-30-2605(1) and (3), MCA, "determines that the amount of tax due is greater than the amount" of tax computed by the taxpayer on the return, MDOR must, in accordance with § 15-1-211, MCA, then "mail to the taxpayer a notice . . . of the additional tax proposed to be assessed." Section 15-30-2642(1), MCA. "The taxpayer may [then] seek [MDOR] review of the *determination* pursuant to 15-1-211." Section 15-30-2642(1), MCA (emphasis added). In that regard, MDOR:

> shall provide written notice to a person or other entity advising the person or entity of a dispute over matters administered by the department. . . . The notice must advise the person or other entity of their opportunity to resolve the dispute with the person responsible for the notice and their right to refer the dispute to the [MDOR ODR]. . . . [MDOR must send notice of an ODR referral] to the [parties] involved in a dispute . . . [which] must include . . . a summary of [MDOR's] position[,] . . . the right to obtain a final [MDOR] decision within 180 days of the [ODR referral,] the right to obtain a final [MDOR] decision within 30 days of . . . [receipt of] an election to

---

[14] However, the three-year deadline specified by § 15-30-2605(3), MCA, for MDOR revision of an incorrect taxpayer return expressly does not apply to MDOR audits and assessment of tax liability to taxpayers who either "do[] not file a return as required" by Title 15, chapter 30, MCA, or who "purposely or knowingly file[] a false or fraudulent return" in violation of Title 15, chapter 30, MCA. Section 15-30-2605(2)-(4), MCA.

17

> bypass [ODR] review[,] [and] the right to appeal . . . [if MDOR] fail[s] to meet the required deadline for issuing a final department decision.

Section 15-1-211(3)(a), (d), (4)(a), and (c)-(e), MCA.

¶19 The mere fact that the Legislature could have used more precise language in expressing its intent does not necessarily render § 15-30-2605(1) and (3), MCA, vague or ambiguous as asserted by Wangerin. Nothing in the express language of §§ 15-30-2605(1), (3), or -2642(1), MCA, expressly or implicitly requires that the taxpayer-initiated internal MDOR review remedies be exhausted within three years of the timely filing date of a taxpayer's income tax return. Rather, the consistent language in § 15-30-2605(3), MCA ("the amount of tax due . . . may be *determined* by" MDOR—emphasis added), and § 15-30-2642(1), MCA (if MDOR "*determines* that the amount of tax due is greater . . . the taxpayer may seek review of the *determination* pursuant to 15-1-211"—emphasis added), clearly distinguishes MDOR's initial *determination* under § 15-30-2605(1) and (3), MCA, from the *final department decision* on taxpayer-initiated review of that initial *determination*. *See* §§ 15-30-2605(1), (3), and -2642(1), MCA; *compare* § 15-1-211(3), (2)(c)-(e), and (4)(c)-(e), MCA.

¶20 By citation to § 15-30-2620(2), MCA ("[i]f a term is not defined in" Title 15, chapter 30, MCA, "the term has the same meaning as it does when used in a comparable context in the Internal Revenue Code"[15]), Wangerin asserts that the phrase "determined by the

---

[15] *See also* § 15-30-2101(13), MCA ("'Internal Revenue Code' means the Internal Revenue Code of 1986, as amended, or as it may be labeled or further amended").

18

department" in § 15-30-2605(3), MCA, manifests that the Legislature intended § 15-30-2605(1) and (3), MCA, to "mirror federal tax procedures as set forth in" 26 U.S.C. §§ 6212(a), 6213(a), 6501, and 6503(a) (IRS deficiency notices, taxpayer right to appeal to federal Tax Court, three-year deadline after return filing date for IRS assessment of tax liability, and tolling of three-year deadline upon taxpayer appeal under § 6213(a) and pending ultimate Tax Court resolution of the issue if pursued).[16]  However, Wangerin's narrow focus on isolated language from § 15-30-2605(3), MCA, overlooks that the multi-tiered process at issue under Title 15, MCA (i.e., MDOR notice of erroneous return within three years of return filing date, two-tiered internal MDOR review process under § 15-1-211, MCA, MTAB appeal, and then judicial review), sets forth a significantly different statutory process, based on Montana-specific statutory language, than the more limited Internal Revenue Code (IRC) process cited by Wangerin (IRS notice of deficiency, resulting IRS assessment of additional tax liability within three years, and federal Tax Court appeal).  Even to the extent that the cited IRC process is at least *functionally* analogous in essence to the Montana process under §§ 15-30-2605(1), (3), -2642(1), and 15-1-211, MCA, the isolated phrase "determined by the department" singled-out from § 15-30-2605(3) is not an undefined "term" as referenced in § 15-30-2620(2), MCA.  Nor do the IRC provisions cited by Wangerin define an analogous federal law "term"—they

---

[16] Without citation to a corresponding Internal Revenue Code section or regulation, Wangerin also points to the IRS audit/deficiency notice and appeal process as described in IRS Manual § 4.10.2.2.2 (Sept. 9, 2019).

19

merely define a somewhat analogous IRC process. We hold that MDOR correctly construed § 15-30-2605(1) and (3), MCA, in the context of the larger statutory scheme in which it is an integral component part.

¶21 Finally, Wangerin further asserts that the District Court erroneously affirmed the MDOR denial of his rule petition because the asserted MDOR interpretation of § 15-30-2605, MCA, is a "rule" as defined by § 2-4-102(11), MCA ("agency regulation, standard, or statement of general applicability" that, *inter alia*, "implements, interprets, or prescribes law or policy"), and is thus invalid as a matter of law because MDOR created such "rule" outside the formal rulemaking process mandated by §§ 2-4-302 through -314, MCA. However, apart from pointing to an extra-judicial characterization by agency counsel of the MDOR position as a "standard" or "agency wide" interpretation of § 15-30-2605, MCA, Wangerin has provided no legal authority or analysis supporting the essence of his proposition that an agency assertion of a plain reading of the express language of pertinent statutory provisions in the context of a dispute with a taxpayer elevates the agency's plain reading of a statute to a separate administrative "rule" as defined by § 2-4-102(11), MCA. He has further failed to demonstrate on what legal basis his characterization of MDOR's reading or assertion of the meaning of § 15-30-2605, MCA, as a separate administrative "rule" renders MDOR's preliminary § 2-4-315, MCA, denial of his proposed rule contrarily interpreting § 15-30-2605 either arbitrary, capricious, or unlawful.

¶22 For the foregoing reasons, Wangerin has not satisfied his burden of demonstrating that MDOR's preliminary denial of his rule petition under § 2-4-315, MCA, was arbitrary, capricious, or unlawful. To the contrary, the record manifests that MDOR preliminarily denied the petition in accordance with the procedure specified by § 2-4-315, MCA, based on a correct interpretation of the statutory provisions at issue, and a correspondingly reasoned conclusion that the proposed rule was neither necessary, nor consistent with the pertinent Montana statutes. We therefore hold that MDOR's preliminary denial of Wangerin's petition under § 2-4-315, MCA, for adoption of a proposed rule interpreting § 15-30-2605(1) and (3), MCA, was not arbitrary, capricious, or otherwise unlawful.

## CONCLUSION

¶23 We hold that MDOR correctly construed § 15-30-2605(1) and (3), MCA, and did not arbitrarily, capriciously, or unlawfully preliminarily deny Wangerin's § 2-4-315, MCA, petition for adoption of a proposed rule interpreting § 15-30-2605(1) and (3), MCA. We therefore affirm the February 2022 judgment of the Montana Third Judicial District Court, Powell County.

/S/ DIRK M. SANDEFUR

We concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON

21